(118 App. Div. 109)

### WYMAN et al. v. WYMAN et al.

(Supreme Court, Appellate Division, First Department. March 8, 1907.)

WILLS—EXECUTION—EVIDENCE—SUFFICIENCY.

Code Civ. Proc. § 2627, provides that a decree admitting a will of real property to probate, as prescribed in chapter 18, tit. 3, establishes presumptively all the matters determined by the surrogate pursuant to the article, as against a party who was duly cited or a person claiming through or under him. On an issue as to whether the facts destroyed the presumption

created by the statute, it appeared that after the death of testator, who was a lawyer, the will in question was found in his safe at his home; that the will was holographic, and was inclosed in an envelope sealed with wax seals bearing the impression of testator's watch charm; and that the envelope in which it was contained bore an inscription in testator's handwriting to the effect that it was his last will. The will bore a proper attestation clause and appeared on its face to have been properly witnessed under the statute by three witnesses. Two of the attesting witnesses appeared on the probate proceedings and subscribed to the usual depositions, which showed that they had been acquainted with testator for 15 years and that the will was witnessed as required by statute. Two years after the will and one year after its probate, such witnesses testified that when they signed the paper they did not know that it was a will, that the signature of testator was not upon it when they signed it, that their signatures were not made in the presence of each other, and that testator made no declaration that the ·instrument was his will. *Held*, that the evidence was insufficient to show that the will was not properly executed.

Appeal from Special Term, New York County.

Action by Lemuel A. Wyman and another against Mary Wyman, individually and as executrix of the will of Isaac Wyman, deceased, and others. From a judgment wherein the validity of the will was established and a construction thereof decreed, defendants appeal. Modified and affirmed.

Argued before PATTERSON, P. J., and McLAUGHLIN, INGRAHAM, CLARKE, and SCOTT, JJ.

C. Elliot Miner, for appellant Lorsch.

David B. Cahn, guardian ad litem, for appellants Wyman and Heilman.

Leo Levy (C. Arthur Levy, on the brief), for respondent Mary Wyman.

Harry Mack (Lewis M. Isaacs, of counsel) for respondents.

CLARKE, J. This is an action for partition, in which the interpretation of a will is asked, brought by an alleged devisee under the will. An issue is raised by one of the defendants, a daughter of the decedent, that the testator, at the time he executed the will, did not have testamentary capacity, and that the instrument was not signed, published, and declared in the manner provided by law, so as to be entitled to probate as a last will and testament.

Upon the trial the plaintiff offered in evidence the deeds establishing the title of the premises in question in the decedent at the time of his death and the record from the Surrogate's Court showing the admission to probate on the 26th day of January, 1904, of the will of Isaac Wyman, dated May 26, 1902, as a will of real and personal property, and the necessary evidence as to the heirs at law of the decedent, and rested. Section 2627 of the Code of Civil Procedure provides that a decree admitting to probate a will of real property, made as prescribed in article 1, tit. 3, c. 18, of the Code of Civil Procedure, establishes presumptively only all the matters determined by the surrogate pursuant to said article, as against a party who was duly cited or a person claming through or under him. The defendant appeliant thereupon undertook to destroy that presumption.

The testator was 57 years of age at the time of his death on January 11, 1904. The will bears date and purports to have been executed on the 26th day of May, 1902. The decedent was a lawyer and an insurance man. The will is holographic, and contains a complete attestation clause, and is signed by three witnesses, each of whom attaches his address to his signature. The will was found after the testator's death in his safe at his house in an envelope sealed with two sealing wax seals with the impression of his watch charm. Said envelope bore the inscription, in the handwriting of the decedent, "Last will and testament of Isaac Wyman," and "May 26th, 1902." With the envelope containing the will was found a second envelope, containing the inscription, in the decedent's handwriting: "Notice. In case of my death, I request my family to open this letter of instruction and wishes immediately. I. Wyman"—and on the back of this envelope the following: "Isaac Wyman, 48 East 91st Street, New York." In this latter envelope were instructions as to the conduct of his funeral, funeral notice to be inserted in the papers, and a desire that his wife should furnish all his daughters their mourning suits and pay for the same, and that they should be dressed alike.

The testator was suffering with tuberculosis of the throat, and upon the advice of his physician went to the Adirondacks for his health within a day or two after the date of the will, May 26, 1902. From this fact, and from the contents of these papers, it is a conclusive inference that, knowing the condition of his health and mindful of the uncertainty of life, he had put in order his worldly affairs before going away. As the will was in his own handwriting, and was carefully preserved in his own possession in the safe in his own house for nearly two years after its execution, the envelope containing it indorsed with his own statement that it was his last will and testament, it is impossible to reach any other conclusion than that, so far as he was concerned, he had intended to dispose of his property by a valid last will and testament, and that he supposed that he had done so.

Two of the attesting witnesses appeared on the probate proceedings on the 26th day of January, 1904, before the assistant to the surrogate, and subscribed the usual depositions in probate proceedings, which depositions contain the verification of said assistant that the witnesses were sworn and examined before him on that day. Cohn's deposition contains the statement that he had been acquainted with the decedent 15 years before his death, and Traub's that he had been acquainted with the decedent for 20 years before his death, and each contains the statement that the subscription of the name of the decedent was made by him in the presence of deponent and the other two subscribing witnesses, naming them; that at the time of said subscription to said instrument decedent declared the instrument so subscribed by him to be his last will and testament, and that the deponent then signed his name as witness at the end of said instrument at the request of said decedent and in his presence; that the decedent at the time of executing said instrument was, in the opinion of said deponent, of sound mind, memory, and understanding, not under any restraint or in any respect incompetent to make a will; that deponent saw the other subscribing witnesses sign their names as witnesses at the end

of said will, and knows that they did so at the request and in the presence of the decedent. There is no dispute but that the body of the will is in the handwriting of the decedent and was written with a broad-nibbed pen and in one kind of ink, while the signatures of the decedent and of each of the three subscribing witnesses, with their addresses added, are written with a sharp-pointed pen and with an ink different from that used in the body of the will, but of a similar appearance as to each of the signatures. There is also no dispute but that each of the four signatures to the will is in the proper handwriting of each of the persons purporting to have signed the same.

Nearly three years after the date of the will, and one year after its probate upon the depositions of two of the subscribing witnesses, these witnesses attempt to destroy this instrument, which undoubtedly embodies the testamentary intentions of the decedent, by evidence given upon the trial in flat contradiction to the attestation clause subscribed by them and to their depositions in the probate proceedings. They testified that at the time they signed the paper they did not know that it was a will, although each of them added his residence to his signature, a will being the only instrument to which the law requires that the residences of the witnesses be so added; that the signature of the decedent was not upon the will when they signed it; that their signatures were not made in the presence of each other; and, although each swears that he signed at the request of the decedent, that at the time of the signing he did not declare it to be his last will and testament. The paper was executed during the morning of May 26, 1902, at a saloon which had been the common meeting place of all of these parties for a number of years. There seems to be no doubt but that the pen and ink with which all the signatures were written was furnished by the barkeeper, who testified that shortly before the decedent went away to the Adirondacks he remembered an occasion of the signing of a paper by the decedent and these witnesses, when he furnished the pen and ink.

The subscribing witnesses contradict each other in some respects in the account of the proceedings upon the morning that they admit they signed the paper. In view of the fact that the decedent was a lawyer, and therefore acquainted with the requirements of the statute in regard to the necessary formalities in the execution of a last will and testament, that he drew the instrument with his own hand, that the attestation clause is full and complete, that the signature of the witnesses is followed by their several addresses, that the paper was kept carefully preserved, marked "Last will and testament of Isaac Wyman," in the decedent's safe, together with a letter of instructions as to the details of his funeral in his own handwriting, in view of the presumption arising from the signatures being attached to the attestation clause and from the depositions taken before the assistant to the surrogate on the probate proceedings, I think that the learned trial court, who saw and heard the witnesses upon the stand, was entirely justified in rejecting their oral testimony and in the conclusion reached by him of the due factum of the will. Under such circumstances the conclusion reached by the trial court is of very great

importance. Independent of that, upon the printed record as made, we are entirely satisfied with this conclusion.

There are many cases in the books in which the validity of a will has been established, notwithstanding the forgetfulness of the subscribing witnesses or their positive testimony as to the failure to observe the prescribed formalities. Matter of Cottrell, 95 N. Y. 329, cites many of such cases, and is a direct authority for the conclusion which we have reached in the case at bar. In that case, as in this, there was a holographic will, not only properly signed and executed by the testator, but also signed by the witnesses and appearing upon its face to be entirely regular, and purporting to have been executed with all the formalities and in the manner required by law to make a good and valid will; but the two persons purporting to have signed that will as subscribing witnesses, not only testified that none of the formalities required by the statute were complied with in its execution in their presence, but also positively denied that either of them was present at its execution or signed the attestation clause. Yet nevertheless the decree of the surrogate admitting the will to probate was affirmed by the General Term and by the Court of Appeals. Chief Justice Ruger said:

"It would seem, from the language of the Code (section 2620), that proof of the handwriting of the testator and of the subscribing witnesses to a proper attestation clause was regarded as the most important and conclusive fact on the trial of an issue as to the proper execution of a will. Such evidence, in connection with other circumstances tending to prove its due execution, would seem, within all the authorities, to justify a decree admitting it to probate, even against the positive evidence of the subscribing witnesses. It was always considered to afford a strong presumption of the compliance with the requirements of the statute in relation to the execution of wills that they had been conducted under the supervision of experienced persons, familiar, not only with the form required by the law, but also with a strict adherence thereto."

The learned judge proceeded to find that presumption in that case because the testator had not only once correctly gone through the ceremony of executing a will, but by drawing the attestation clause in question he had at the time necessarily brought before his mind each one of the conditions imposed by the statute as necessary to its valid execution. "It is quite unreasonable to suppose that such a person, having drawn and signed a will and having added thereto a proper attestation clause, should have provided witnesses therefor and required them to sign a certificate to the effect that each of the required formalities had then been observed, without also providing for their actual performance." This presumption is all the stronger in the case at bar, because the decedent was a lawyer and drafted his own will with the proper attestation clause. Upon the issue of the want of testamentary capacity the learned trial court said that it "entertained absolutely no doubt that he had that intellectual and mental power requisite for the execution of a will." In my opinion the evidence justified and required that conclusion.

The will, after providing for the payment of the decedent's just debts and funeral expenses, and for a gift to each of his children of the sum of $100, provided as follows:

"Third. All the rest and residue of my property, real, personal or mixed, wheresoever situated, which I now own or may hereafter acquire and of which

I shall die seised or possessed, I give, devise and bequeath absolutely and in fee simple to my beloved wife, Mary Wyman, her heirs and assigns, forever, with this proviso and exception, that in case she should remarry, then I direct my children to take legal proceedings and have her removed as executrix. * * *

"Fifth. After the death of my beloved wife, Mary Wyman, I request that my estate be closed up, should it be consistent so to do, and the proceeds to be divided share and share alike amongst my then living children."

The learned trial court held that under the said will the four children "are together seised and possessed of the remainder in fee of the real estate described in the complaint, as tenants in common, subject to the life estate of their mother, the defendant Mary Wyman, and subject to be divested by the death of any of the said remaindermen before the death of their mother, the said Mary Wyman," and "that the defendant Mary Wyman is seised of the life estate, for and during her natural life, of said real property," and dismissed the complaint as to the partition, and as to the construction of the will ordered judgment as found. We do not agree with this construction of the will. But it is unnecessary in this action to determine the precise estate given to the widow; for, whether she holds an estate in fee simple or a life estate, this action for partition cannot be maintained.

The judgment should therefore be modified, by striking out therefrom so much as construes the will, and, as so modified, affirmed, with costs to the executrix and the guardians ad litem, to be paid out of the estate. All concur.

---

(118 App. Div. 116)

### In re WYMAN'S WILL.

(Supreme Court, Appellate Division, First Department. March 8, 1907.)

Appeal from Surrogate's Court, New York County.

Judicial proceedings on the probate of the will of Isaac Wyman, deceased. Appeal from a decree of the Surrogate's Court refusing to revoke the probate of the will. Affirmed.

Argued before PATTERSON, P. J., and McLAUGHLIN, INGRAHAM, CLARKE, and SCOTT, JJ.

C. Elliot Miner, for appellant.

Leo Levy (C. Arthur Levy, on the brief), for respondent Mary Wyman.

Harry Mack, for respondent Lemuel Wyman.

Bernard S. Heller, for respondents Heilbron and Heilman.