---

In re WOOD'S WILL.

(Supreme Court, Appellate Division, Second Department. April 21, 1911.)

1. WILLS (§ 293*)—PROBATE—EVIDENCE—ALTERATION—TIME OF MAKING.

That testator, who himself wrote out his will, was an uneducated man, though with full comprehension of his affairs and his desires as to his property, and used only language of common apprehension, with little regard for orthography, punctuation, or the rules of literary composition, may be considered on the issue of whether minor alterations in the will were made by testator before or after execution.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 293.*]

2. WILLS (§ 173*)—REVOCATION—ALTERATIONS—EFFECT.

Neither an alteration in the amount of a bequest made by testator after executing his will, nor alterations authorizing the sale of certain property within 15 (instead of 18) months "so as to close up the whole thing in 15 months," and a similar provision as to a general power of sale, nor the obliteration of a provision indicating who should construct a building for which he had provided, not affecting the operative parts of the will or the rights of the parties, will destroy the will, the only effect being to leave the will as originally executed, if that can be ascertained.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 452; Dec. Dig. § 173.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. WILLS (§ 306*)—ALTERATIONS—TIME OF MAKING—EVIDENCE.

On the issue whether certain changes in a will were made before or after execution, evidence *held* not only to show that they were made before execution, but to raise no suspicion to the contrary.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 306.*]

Appeal from Surrogate's Court, Richmond County.

Application for probate of the will of Jacobson W. Wood, deceased. From a decree of the Surrogate's Court admitting the will to probate, the contestant, Mattie S. Ritz, appeals. Affirmed.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

Charles O. Maas, for appellant.

Charles H. Beckett and M. Linn Bruce, for respondents.

WOODWARD, J. The decision of this appeal might well be made to rest upon the reasoning of the learned surrogate in an opinion handed down, but counsel urges so insistently that the decree should be reversed that we have concluded to point out some further considerations which justify admitting the paper to probate as the last will and testament of the deceased. It is conceded that there is but a single question involved. The paper propounded concededly conforms to all of the requirements of the statute, and it is not questioned that the testator was of sound, disposing mind, free from all undue influences, or that the instrument was executed with all of the formalities required by law. The question arises over the alleged alterations and mutilations of this will; it being the contention of the contestant that, the will being altered and mutilated, it was for the proponent to establish by evidence that the paper propounded was in the same condition as when executed by the testator; that the alterations and mutilations existed at the time of the execution, and were not subsequently made. The will was written out by the testator himself, the attestation clause alone being in the handwriting of a clerk in the office of one of the subscribing witnesses, and there is no suggestion of fraud or collusion, or of anything amounting to or suggesting bad faith on the part of any one. This is all disclaimed on the part of the contestant.

[1] The testator was an uneducated man, though unquestionably having a full comprehension of his affairs, and of what he desired done with his property. He used language of common comprehension, but with very little regard for orthography or punctuation, or any of the rules governing good literary productions, and these matters, which were before the surrogate and which are now before this court, are properly to be taken into consideration in determining the issue on this appeal.

[2] The only alteration in this will which in any wise changes the substantial rights of any one is found in the paragraph marked "8th," in which it appears that the clause originally read: "I leave to the Salvation Army at 14th St. Two Hundred dollars $200." This appears to have been changed at some time by the interlineation of the word "fifty" between "hundred" and "dollars," and the making over of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

figures to "$250." There is no apparent difference in the ink used. There is no difference in the handwriting, so far as appears. Indeed, it is not suggested that there was ever any opportunity for any one to make these changes, except the testator himself or the contestant, a sister of the testator, and no one intimates that she did anything of the kind. The authorities appear to be unanimous that this change, if made by the testator after the execution of the will, would not operate to destroy the same; that its only effect would be to leave the will as originally executed, if this fact could be determined. Matter of Ackerman, 129 App. Div. 584–585, 114 N. Y. Supp. 197, and authorities there cited; Matter of Curtis, 135 App. Div. 745, 748, 119 N. Y. Supp. 1004. The only other alterations relate merely to details, affecting no rights. In one place he authorizes the sale of certain property at private sale or at auction so as to "close up the whole thing in 15 fifteen months," and it is easily to be seen from the figures that this was originally fixed at 18 months. A similar provision is found in reference to a general power of sale, and at a point where a piece of paper has been pasted on there are some words indicating that the testator had intended to provide for or indicate who should construct a building for which he had provided. None of these things affect the operative part of the will, or change the rights of parties in any manner, and, as we have already pointed out, they would not operate to invalidate the will, as executed, if made by the testator after the execution of the will. This much for the alterations.

[3] The will is drawn on legal cap paper, double sheets fastened at the top with a knotted string, the first three pages being written on one side only. The fourth sheet is cut out, apparently with shears, as the edges are notched, and then the matter runs smoothly to the fifth page, except that he closes the fourth page with the provision that the "proceeds therefrom I desire to give to," and the fifth page opens with "To the Methodist Episcopal Hospital," etc., an error which might happen to one more accustomed to drawing instruments than the testator. The sixth page, as the same was originally put together, runs the full length of a page, and then on the underside of this page, lapping something over an inch, is pasted about one-half of a sheet of the same kind of paper, so that this page is about once and a half as long as an ordinary page, and this is filled to the bottom, and it is under this lap that the words above referred to appear. On the back of this last page, something over half way down, there is a provision giving to the testator's sister, the contestant, anything she is able to find about the place, which has not been specifically disposed of, and then, after another space, there is a residuary clause, and then follows the signature of the testator, and this is followed by the attestation clause written in by a Miss Williams at the time of the execution of the will, and this is signed by the witnesses. The words, "If there is any surplus after all Bills," is written on the last page, just before the paper which is pasted on, and on the added paper are the words "and expenses are paid to go to the Memorial M. E. Hospital. If they accept, for the rents, etc., should more than pay all expense," and the signature and attestation clause follow immediately. When it is

remembered that there is no suggestion of fraud or bad faith on the part of any one, that the testator, a bungler in composition, had laboriously written out this elaborate will, what is there suspicious about these alleged alterations and mutilations, what is there in the fact that one sheet of paper has been cut out and the will continued upon the next page, and that another sheet of paper had been attached on which the will was continued, to arouse suspicion on the part of the court that the testator had made the changes after the execution? None of the changes made any difference in the disposition made of his property, with the exception of the $50 addition to the Salvation Army, and, as we have already pointed out, the only effect of this would be to leave the will as originally executed, assuming it to have been changed after the execution. So far as the other changes are concerned, they merely related to the time when the estate should be fully administered, and it would make no material difference to any one whether this time was fixed at 15 or 18 months, and such provisions would not operate to invalidate the will. It cannot be doubted that the testator had a perfect legal right to cut out the blank sheet of paper, or to remove it after it had been written upon, before the execution of the will. It is equally clear that he had a perfect legal right to paste on a piece of paper, even though that paper should have upon it inoperative words which were covered up by the lapping of the ends, and none of these things were so improbable on the part of a testator of the peculiar make-up of the person in question as to arouse any suspicion whatever that the paper which has been admitted to probate is different from that which was duly executed in the latter part of the year 1908. It would be difficult, after an examination of the will in its concededly valid parts, to conceive of anything more natural, or more to be expected, than that which actually exists. The paper as propounded seems to be a complete expression of the man who is portrayed in the evidence, and its so-called mutilations afford the internal evidence of its genuineness. It is difficult to account for the fantastic forms which appear in the papers of men who have had larger advantages than the testator, and the fact that this carpenter and builder, who goes into details in his will on matters of building, should introduce some architectural spacing in the final pages of his will, is not surprising. It would be rather remarkable if he had concisely stated his propositions, carefully numbered the paragraphs, and preserved the dignity of the written page, and it seems to us entirely clear that his alterations and mutilations were merely the manifestations of his eccentricities, and the suggestion that he could have patched up this will after the execution in the manner which now appears seems to us unthinkable. The will as it now appears is just what we would expect from the source. It is a botch job, but it would necessarily be a botch job coming from a man whose experience in drawing wills had come through the drawing of specifications for buildings by one who was uneducated along any scholastic lines.

But, if evidence were necessary to establish that the will is the one which was actually executed with all the formalities of the law, it is not wholly lacking. The evidence is that the testator brought a paper

to the office of Mr. Williams, one of the witnesses, and handed a paper to him, requesting him not to read it, as it was his will, but requesting Mr. Williams to sign the same; that Mr. Williams called attention to the necessity of a second witness, and to the requirement of an attestation clause; that the testator went out and brought in the second witness; and that Miss Williams drew the attestation clause. Mr. Cole, the second witness, testifies that:

"The paper was doubled up, just as Mr. Williams said—in a sort of bunglesome way. He was particular that we didn't see it."

Miss Williams testified that the paper was doubled up, and that she did not see anything more than the last part of the page. She says:

"I didn't unfold it. I noticed that it consisted of several pages, but it was crumpled up somewhat. I had to fold it down with my hand in order to write the attestation clause."

Any one who has had any experience in handling papers of this character knows that it is very easy and simple to fold them accurately so long as all of the pages are of equal size, but that it is practically impossible to make a compact package if one sheet is longer than the others, and particularly if there is mucilage used in the fastenings at the point where the uniform-sized sheets come to an end. The first four sheets of the will are clearly creased. They bear evidence of having never been folded in anything other than the regular way, while the long sheet is badly mussed, and shows the usual "bunglesome" way of such pages, and the description which the witnesses give indicates clearly that the papers, at the time of the execution, were in their present condition, making allowances, of course, for wear and tear. There was something peculiar about the papers to be noticed by two disinterested witnesses, and that peculiarity is to be explained by the fact that a half sheet of legal cap paper had been pasted onto the last sheet, with a long lap, and this had caused the "crumpled up" appearance as testified to by Miss Williams, and the "bunglesome" appearance which is described by Mr. Cole. It was all in keeping with the man, and the evidence warrants the inference that the same "bunglesome" paper was before the subscribing witnesses which is now before this court.

Nothing is more common than for persons to be called upon to witness the execution of wills where they are not permitted to know the contents of the same, and if the presence of a mere correction in the amount of a bequest, or in the detail of administration, or the cutting out of a sheet of paper from a bound group of such papers, gives rise to the presumption that the paper has been changed after the execution, there are many wills extant which could not be admitted to probate. We do not believe that is the law of this state, and particularly where, as here, no suggestion of fraud or bad faith is present.

The decree appealed from should be affirmed, with costs. All concur.