RAUGHT v. WEED et al.

(Supreme Court, Appellate Division, First Department.   December 3, 1915.)

1. WILLS ☞204—PROBATE—REVOCATION.

An action to revoke the probate of a will was brought in the Supreme Court under Code Civ. Proc. § 2653a. The administrators with the will annexed were at that time served, but the infant defendants were not served until after the amendment of the Code of Civil Procedure by Laws 1914, c. 443, which repealed section 2653a. *Held* that, as the new Surrogate's Code (Code Civ. Proc. § 2771) declares that nothing in the chapter should repeal or amend any existing law applying to any pending action, the action might be continued; it having been pending at the time of the repeal, though all the parties had not then been served.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 506;  Dec. Dig. ☞204.]

2. WITNESSES ☞268—CROSS-EXAMINATION—LATITUDE.

Where a subscribing witness gave contradictory testimony, and his evidence tended to show bias, wide latitude in cross-examination should be allowed.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 931–948, 959;  Dec. Dig. ☞268.]

3. WILLS ☞324—PROBATE—REVOCATION.

In a suit to revoke the probate of a will, the question of due execution *held*, under the evidence, for the jury.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 225, 767–770;  Dec. Dig. ☞324.]

4. TRIAL ☞194—INSTRUCTIONS.

Where due execution of a will was a question of fact for the jury, the refusal of applicable instructions and the giving of instructions which in effect directed a verdict against the will was error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 436, 439–441, 446–454, 456–466;  Dec. Dig. ☞194.]

Appeal from Trial Term, New York County.

Action by Nettie Raught against Albert G. Weed and Everett F. Warrington, as administrators with the will annexed of the estate of Roland D. Jones, deceased, and others to revoke probate of the instrument. From a jugment revoking the probate, defendant Roland J. S. Marsh and others appeal. Reversed and remanded.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and SMITH, JJ.

C. Lansing Hays, of New York City, guardian ad litem, for infant appellants Marsh.

Edward D. Dowling, of New York City, guardian ad litem, for infant appellant Raught.

William Murray, of Brooklyn, for respondent Raught.

Charles J. McDermott, of New York City (William A. Campbell, of New York City, of counsel), for respondent Weed.

CLARKE, J. This is an action brought under section 2653a of the Code of Civil Procedure to revoke the probate of the last will and testament of Roland D. Jones, which was admitted to probate by the

Surrogate's Court, county of New York, October 29, 1913, upon the petition of the plaintiff herein, who was the sister and the sole living adult next of kin of the decedent. The will was entirely in the handwriting of the decedent and is as follows:

"Hotel Roland, Fifty-ninth Street, Between Madison and Park Avenues.

"New York, June 25, 1907.

"Be it remembered, that I, Roland D. Jones, of the city of New York, in the state of New York, Esquire, do make this my last will and testament, in manner as follows, that is to say—

"I order and direct that all my just debts shall be paid with convenient speed. I give to my sister, Nettie Raught, ten thousand dollars.

"All the residue of my estate, real, personal and mixed, wheresoever it may be found, and of whatsoever it may consist, I direct a trust fund shall be formed of it and held in trust until the youngest child of my two sisters is thirty-five years of age.

"I direct that all the interests, income and rentals of each year shall be paid to the children of my deceased sister Meta M. Marsh, and of the children of my sister Nettie Raught each share and share alike equal division after the expenses of the trust are paid.

"I direct that after the youngest child of my deceased sister Meta and of my sister Nettie reaches the age of thirty-five then the trust fund and all the rest of my estate be divided in equal division, of share and share alike, for the children of my sisters, Meta and Nettie and I give and devise unto each of them, to hold to him and to her forever. By the youngest child is meant the youngest one that is in both families collectively.

"I direct that the trustees of the said trust fund shall hold all my real estate to the end of the trust fund or until its termination with the moneys from all other sources. I direct them to invest the said moneys in any securities which are allowed by law. All taxes and repairs to real estate must be paid for before the net income is divided.

"In witness whereof, I the above named testator have hereunto set my hand and seal this the twenty-fifth day of June, in the year of our Lord nineteen hundred and seven, 1907.                    Roland D. Jones. [L. S.]

"Then and there signed and sealed, and published by Roland D. Jones, the testator, as and for his last will, in the presence of us, who, at his request, in his presence and in presence of each other, have set our names as witnesses.

"Witness:   W. R. Bruyere.   [Seal.]
"Witness:   B. A. Block.     [Seal.]"

Roland D. Jones was a physician in this city, and died September 25, 1913. The two defendants, Roland Jones Shankland Marsh and Lillian Meta Marsh, were infant children of a deceased sister, Mrs. Marsh, and Roland D. J. Raught, defendant, is the infant son of the plaintiff. The will was admitted to probate upon the affidavit of Walter R. Bruyere, verified before the assistant to the surrogate on the 17th day of October, 1913. This affidavit sets forth that affiant—

"was acquainted with Roland D. Jones, now deceased. The subscription of the name of said decedent to the instrument now shown to me and offered for probate as his last will and testament, and bearing date of the 25th day of June, in the year 1907, was made by the decedent at the city of New York on the 25th day of June, 1907, in the presence of myself and B. A. Block, the other subscribing witness. At the time of making such subscription the said decedent declared the said instrument so subscribed by him to be his last will and testament; and I thereupon signed my name as a witness at the end of said instrument, at the request of said decedent, and in his presence. The said decedent, at the time of so executing said instrument, was upwards the age of 21 years, and in my opinion of sound mind, memory, and understanding, not under any restraint, or in any respect incompetent to make a

will. I also saw said B. A. Block, the other subscribing witness, sign his name as a witness at the end of said will, and know that he did so at the request and in the presence of said decedent. I knew said decedent for 17 years before the execution of said instrument."

The will not having appointed any executors or trustees, the court appointed Albert G. Weed and Everett F. Warrington administrators with the will annexed. Two administrators were appointed, in view of the different interests of the Raught and Marsh families. Nettie Raught signed and acknowledged on November 25, 1913, a consent to the appointment of Albert G. Weed—

"and to such other person as may be selected by the said Albert G. Weed to act as trustee or trustees to administer, execute, and carry out the trust created by and existing under the last will and testament of Roland D. Jones, deceased, and do hereby waive the issue of a citation or other notice to me. This consent is given without prejudice to my right to contest the validity of said alleged trust."

[1] The court in this case by order permitted the administrators to appear and answer separately, which they have done. . The summons and complaint were served on March 10, 1914, on the defendants Weed and Warrington. The infant defendants were served in November, 1914. The Code of Civil Procedure was amended by chapter 443 of the Laws of 1914, enacting the present Surrogate's Code, and section 2653a was repealed. The repeal went into effect on September 1, 1914. At this time the infant defendants Marsh had not been served with a summons and complaint in the action. A saving clause was contained in the new Surrogate's Court Act which reads:

"Sec. 2771. *Effect of This Chapter on Laws Applicable to Certain Counties.* Nothing in this chapter shall repeal, amend or modify any existing law especially applying to any county, which is inconsistent with any section of this chapter, nor in any manner affect any litigation, action or special proceeding pending at the time when this act takes effect, and such pending action or special proceeding shall proceed under the practice established, the same as though not affected by this act."

This provision is state-wide. Matter of Iovinella, 166 App. Div. 460, 151 N. Y. Supp. 1007.

The point is made that this action could not be considered as pending at the time of the repeal of section 2653a, because the infant defendants had not then been served with a summons and complaint, and therefore that the Supreme Court had no jurisdiction, but the issue should have been tried out in the Surrogate's Court. The court below overruled this contention, and I think properly so. The action was brought under the provisions of law then existing, and it was pending at the time of the repeal, although all of the parties had not been served.

[2-4] Plaintiff claims that the execution of the will was fatally defective. The will was written by decedent, contained the proper attestation clause, and was signed at the end by the testator and two witnesses—B. A. Block, who predeceased the testator, proof of whose handwriting was given on the trial, and Dr. Walter R. Bruyere, a physician and associate of the testator for many years. Upon the death of the testator the instrument was found in his safe deposit box. Mrs.

Raught and Dr. Bruyere were present at the opening of the box, and the will was found and read in the presence of the plaintiff and others, and was on September 25, 1913, filed in the office of the surrogate.

On the main question of the execution of the will Dr. Bruyere testified that he had been associated with Dr. Jones for several years; that his signature was on the will; that Mr. Block's signature was there below his, and that he saw Mr. Block sign; that he was asked to put his signature on that paper by Dr. Jones; that he put this paper on the table, and asked him to sign there as a witness, and he did; that he said nothing further at that time. Then he wanted to get Mr. Block, and he took the paper out with him and went out and got Mr. Block. He said to Mr. Block: "I want you to sign here as a witness." Mr. Block then signed. The doctor took the paper and folded it up and put it in his pocket and went out. The witness said he did not read a word of the paper, and that Dr. Jones did not say a word to him nor to Mr. Block about the paper; that he had never been a witness to a will at any other time, and did not know anything about the requirements of law as to the making of a will.

Under cross-examination he said: That the paper offered looked like the paper he signed at that time. It was signed by a man by the name of Block. He never signed any other paper with Block, so that must be the one. The doctor's name did not show. There was some writing there at the bottom, but he did not read it. He had it folded under so you could not see his name; that he had signed papers for the doctor before; not so frequently, several times. He had signed them for the doctor without looking at them, half a dozen times.

"Q. Doctor, you testified you had never witnessed a will before, didn't you? A. Yes, I believe so. Q. Isn't it a fact that you did witness a will of the doctor's some years before? A. Might have been; might have— I think I did witness a will for him in 1893. I believe he said it was his last will. Q. He asked you to sign it, didn't he? A. Yes. Q. He signed it in your presence, didn't he? A. No; I didn't say that. I signed it in his presence. What it was I don't know. Q. He acknowledged it was his will? A. He said he wanted me to sign as a witness to his will."

He was then asked:

"Q. What was your position in this hotel, Doctor? A. I was the doctor's helper in his medical practice; was there as his associate for years, helped him with his practice—patients. Q. You also assisted in the running of the hotel, didn't you? A. Very little; I hadn't much to do with the hotel. Q. You made out the pay rolls, didn't you? A. Yes; I was treasurer of the company and took charge of the money. Q. Have you got a claim against this estate?

"Mr. Murray, I object to that also. (Objection sustained—exception.)

"Q. Dr. Jones was a rheumatic specialist, I think you have testified? A. He was. Q. He had a secret cure for rheumatism, didn't he? A. I don't know about that. Q. You feel rather bitterly toward Dr. Jones, don't you? A. No. Q. Doctor, didn't Dr. Jones promise to give you his formula, his rheumatic remedy?

"Mr. Murray: I object to that.

"The Court: Objection sustained.

*     *     *     *     *     *     *     *     *     *

"Q. When you signed this paper, you did not know whether it was a deed to property? A. I didn't know what it was. Q. Didn't know whether it was a general release? A. I didn't know."

In regard to his affidavit before the surrogate's assistant at the time the will was admitted to probate he says that he—

"looked it over and signed it, and then we went over to a desk, and some man asked me some questions, and I swore to it."

The court, while it went through the form of leaving the question to the jury, as a matter of fact directed a verdict for the plaintiff. He undertook to leave certain questions to them, but he directed the answer to each one of them, and then said:

"I have said that all those questions are to be answered by you in the negative. Let me modify that instruction to this extent: If you shall find that Dr. Bruyere's evidence is not to be credited, as he gave it to you on the witness stand to-day, but, on the contrary, the deposition which he swore to and signed at the time when the will was admitted to probate is accepted by you as the true version of what occurred at the time of the execution of the will, then you may answer each and every one of these questions in the affirmative."

He then refused to charge a request couched in the language of section 2612 of the Code of Civil Procedure. He declined to charge that the testator must be presumed by the jury to have known the requirements of law for the valid execution of a will. He declined to charge that this will was found in the safe deposit vault of the testator is a very important consideration on the issue of fact of the will being his last will and testament. He declined to charge that the will was in the handwriting of the testator is strong indication of the fact that the will was his will. I do not think appellants had a fair trial. There was a question of fact. In support of the proposition that the will was duly executed there were the facts that it was in the handwriting of the decedent, signed by him at the end thereof with a proper attestation clause, with two witnesses thereon whose signature was proven; that it was found upwards of six years after its execution in the safe deposit vault of the testator; that at the time of probate a subscribing witness had verified an affidavit before the surrogate's assistant containing facts which fully warranted the admission of the instrument to probate and had answered questions thereon; that this witness, upon the stand, a year and a half thereafter, and seven years and nine months after the date of the instrument, and without a clear identification of the time of the execution thereof, while testifying to the fact that he and the other witness had each been requested to sign the document as a witness by the testator, said that no other words were said by him, and that he did not declare the instrument to be a will, or acknowledge his signature thereto; and yet this witness, having also sworn that he never had witnessed any other will, and that he did not know that this was a will at the time he witnessed it, subsequently, under cross-examination, admitted that he had witnessed a will for the decedent in 1893, and that on that occasion the decedent had said it was his will, and that he wanted him to sign as a witness to his will, and that he signed in his presence. Under these circumstances wide latitude should have been afforded to the cross-examiner, and it was error not to permit the questions propounded to the witness, tending to show interest and bias, to be an-

swered. And the question of fact should have been fairly presented to the jury, instead of a verdict being in effect directed.

In Wyman v. Wyman, 118 App. Div. 109, 103 N. Y. Supp. 64, affirmed 197 N. Y. 524, 90 N. E. 1167, this court upheld a will which two subscribing witnesses attempted to destroy; they both having testified that at the time they signed the paper they did not know it was a will, that the signature of the decedent was not upon it when they signed it, that their signatures were not made in the presence of each other, and although each swore he signed at the request of the decedent, at the time of the signing he did not declare it to be his last will and testament. That will, like this, was in the handwriting of the decedent, contained an attestation clause, and was found after the testator's death in his safe. We cited Matter of Cottrell, 95 N. Y. 329, where there was also a holographic will but where the two witnesses purporting to have signed that will as subscribing witnesses not only testified that none of the formalities required by the statute were complied with in its execution in their presence, but also positively denied that either of them was present at its execution or signed the attestation clause. Yet nevertheless the will was sustained.

In Matter of Sizer, 129 App. Div. 7, 113 N. Y. Supp. 210, from the date of the will to the hearing on the probate was eight years and seven months. The first and second witnesses testified that they had no recollection of signing the will, or of being asked to, or of anything connected with it, but acknowledged their signature to be genuine. The third witness testified that the testator came to his house and asked him to go across the street to his drug store and witness a signature, and that he went and signed a paper under the names of the two preceding witnesses; that he did not know what the paper was, and that the testator did not say. He did not give the date of this occurrence, how long it was after the other witnesses signed, or even if it was the same day. This will was also holographic. The opinion cites a large number of cases, and the Appellate Division, Second Department, unanimously upheld the will.

In Matter of Abel, 136 App. Div. 788, 121 N. Y. Supp. 452, the will did not contain a formal attestation clause, and all three of the subscribing witnesses were dead, and the ground of attack was that the evidence presented to prove the will did not make out even a prima facie case of due execution under the statute. But nevertheless the will was sustained. The court said, among other things:

"All the authorities, however, agree that the existence of an attestation clause is one of the circumstances attending the execution of the will from which arises a very strong inference of fact that due execution was had; the underlying reason being that all persons are presumed to know the contents of what they sign and are likewise presumed to sign in good faith. Thus, when a signed attestation clause is found on a will, and recites due execution, that fact is deemed a basis for a strong inference that there was an execution of the will according to the recitals."

I think there was a question of fact which was not fairly presented, and that the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur.