In the Matter of the Estate of Lavine A. Bromley, Deceased.

Surrogate's Court, Washington County, January 18, 1927.

**Wills — reopening decree of probate — claim that document admitted to probate is not decedent's will, unsubstantiated — interlineations on will do not warrant order setting decree aside — application denied — testimony of expert as to age of ink on document discredited.**

An application for an order reopening a decree of probate and to vacate and set aside said decree on the ground that the document admitted to probate as the will of decedent is not an original and genuine document, but a manufactured manuscript created and offered as decedent's genuine will, must be denied, in the absence of evidence sufficient to substantiate such a claim; the fact that the will shows on its face some alteration in connection with the name of one of the executors, and other interlineations, does not warrant setting aside the decree in the absence of evidence of any suspicious circumstances in connection with these alterations.

The testimony of contestant's expert witness, that he was able to determine the approximate time the ink used by the testator and by the subscribing witnesses had been on the will, was discredited on his cross-examination and by the testimony of character witnesses.

Application for an order reopening a decree of probate and to vacate and set aside such decree.

*Henry F. Toohey* and *James M. Dunlavey*, for the petitioners.

*Harry L. Russell*, special guardian for infant.

*Herbert Van Kirk* and *Walter A. Chambers* for the executor.

Fraser, S. Georgia Bromley, the widow, and Dorothy Bromley, the daughter of decedent and his only next of kin and heir at law, are the petitioners in this matter. They were severally duly cited on the probate of the will but neither of them appeared in the probate matter, but they were subsequently moved to institute this proceeding, as appears by the petition herein, in consequence of the opinion of Albert H. Hamilton, who has testified herein that he is a handwriting expert of forty-one years' experience, that the document admitted to probate as the will of decedent " is not an original, genuine document, but is a manufactured and doctored manuscript that has been created and offered as a genuine will."

The will gives the widow $2,000 in lieu of dower and statutory rights, and gives the balance of the estate to trustees for the benefit of the daughter until she reaches twenty-one years of age, she having been about fifteen years old at the date of the will, July 20, 1920, and twenty years of age at the time of decease of testator. The will provides that the balance of the estate (all

except the legacy to the widow) shall vest in the daughter when she reaches twenty-one years of age, and she shall then be paid one-half of the corpus and shall thereafter until she reaches thirty years of age receive the income from the other half of the corpus, and receive the balance of the corpus when she becomes thirty years of age; and further provides that until she becomes twenty-one years of age the trustees shall apply the income or such part thereof as may be necessary to the maintenance and education of the daughter, and if said income is insufficient for this purpose they shall use such part of the corpus as may be necessary therefor, in addition to the interest.

The will shows on its face some alterations in connection with the change of name of one of the executors, but there is no circumstance casting suspicion on these alterations and nothing in connection therewith that required investigation by the court before admitting the will to probate.

Where an interlineation or erasure is unexplained, there being no circumstance to cast suspicion upon it, it would not be proper for the court to hold that the alteration was made after execution. (*Matter of Voorhees*, 6 Dem. 162; *Matter of Wood*, 144 App. Div. 259.)

Where an interlineation, fair upon the face of the instrument, is entirely unexplained, there is no presumption in the absence of any suspicious circumstances, that it was fraudulently made after execution, and the burden of showing it to be fraudulent is on the contestant.   (*Crossman* v. *Crossman*, 95 N. Y. 145.)

The execution of the will is attested by three subscribing witnesses at the end of an ordinary attestation clause.   Two of these witnesses, Mr. McCormick, the attorney who prepared the will and is one of the persons named therein as an executor and trustee, and the stenographer who transcribed or typed it, severally testified on the probate thereof that the due formalities attending the execution of a will were observed in the execution of this will, and that at the time of its execution the testator was of sound mind and free from restraint; and in this proceeding to reopen the probate the witness who was not examined on the probate of the will was produced and examined and testified that the due and legal formalities were observed in its execution; and each of these three witnesses testified herein that the testator subscribed the will in their presence at the same time that they severally signed it as witnesses; and the said attorney and stenographer each testified herein that the will at the time of its execution was in the same condition in every respect as at the time of its probate and at the time of giving their testimony herein.

Albert H. Hamilton, above mentioned, testified herein that he

was able to determine the approximate time the ink used by the testator and the ink used by the subscribing witnesses in writing their respective signatures had been on the will, and that in his opinion the signature of the testator was written in 1917, and that the signatures of the witnesses were not written until some years later. This testimony of the witness Hamilton is controverted by the testimony herein of the handwriting expert Osborn, in addition to the testimony of the attorney who prepared the will, the stenographer who typed it, and also by the testimony of the other subscribing witness; and an inspection of the signatures by this court leads to the conclusion that each signature was written at about the same time; the color of the ink is the same, each signature is somewhat faded, and the signature of the testator is the least faded of the four, perhaps because he bore more heavily on the pen when writing than did the witnesses.

All the facts and circumstances weigh heavily against the opinion conclusions of the petitioners' expert Hamilton. On cross-examination many ink writings of known age taken from the records of the Surrogate's Court were shown him and in no instance would he venture an opinion as to their age. Obviously such testimony is of no value. If the age of ink could be told in one instance, it could be told in the other. Hamilton's failure to sustain himself on such tests on cross-examination leaves the suspicion that his so-called opinion is but a speculative theory and not based upon any sound test of proven facts, and without Hamilton's testimony the petitioners would have no case. His failure to substantiate his theory discredits the petitioners' whole case.

The testimony of the witness Hamilton is further discredited by the fact that four witnesses were produced herein by the executor, each of whom testified that Hamilton's reputation as to truth and veracity was bad, and each witness testified that he would not believe him under oath, and no witness was produced to sustain his reputation.

Hiram J. Stevens, the present treasurer of Washington county, and who has held this position for many years, testified herein that the testator told him that Mr. McCormick was to be the executor of his estate; and the witness Frank Peets testified that the testator told him that Mr. McCormick was to have charge of the settlement of his estate after his decease.

The witness Hamilton in his testimony stressed the fact that the will was not all written at the same time or on paper of the same size, or on the same typewriter; but the cause of this as appears by the testimony of Mr. McCormick and the stenographer who typed the will, was that the will as at first prepared lay for

a long time in the office of the attorney and was later changed in some respects at the direction of the testator.

There is an utter failure of proof herein to justify the opening of the decree admitting the will to probate. Against the opinion evidence of the discredited witness Hamilton stands the opinion evidence of the handwriting expert Osborn who is in no way discredited, and the evidence of the three subscribing witnesses to the will, each of whom testifies to facts, and " facts are stubborn things " and of much greater weight than opinion evidence under any condition; and the further fact that the testator stated as above set forth that Mr. McCormick was to be the executor and would have charge of the settlement of his estate.

I direct that a decree be entered herein dismissing the petition, with costs to the executor payable out of the estate.