In the Matter of the Probate of the Last Will and Testament of FLORA J. ALLEN, Deceased.

LENA DUNHAM, VIOLA BUSH FISKE, FRANK THOMPSON, ALFRED THOMPSON, EVELYN BROWN HOTCHKISS, EMMA BROWN and CORA BROWN SPARKS, Contestants, Appellants; FLORENCE CLEMENT LAMPMAN and JEANETTE D. KEYES, Contestants, Appellants; MONROE M. SWEETLAND, as Executor, etc., Proponent, Respondent; MASONIC LODGE OF GROTON, N. Y., No. 496, GEORGE DEVLIN and HOME FOR THE AGED, GROTON, N. Y., Legatees, Respondents.

Third Department, November 1, 1939.

*Lusk, Buck, Ames & Folmer* [*Clayton R. Lusk* of counsel], for the appellants Lena Dunham and others.

*Warren, Shuster, Case & Halsey,* for the appellants Florence Clement Lampman and another.

*A. W. Feinberg,* for the respondents, legatees.

*Monroe M. Sweetland,* in person.

HEFFERNAN, J. Appellants, cousins of decedent, dissatisfied with the disposition which she made of her estate, have appealed from a decree of the Surrogate's Court of Tompkins county which admitted to probate an instrument purporting to be her last will and testament.

Decedent was a refined, cultured and well-educated maiden lady who resided on a farm in Tompkins county with her brother until the latter's death in 1928. She was the last of her immediate

family. She began the preparation of her will on November 15, 1928, but did not complete or publish it until the 18th of May, 1931. On that day she went to the home of Mr. and Mrs. Fitch, her neighbors. Mr. Fitch, although not a lawyer, occasionally drew deeds, mortgages and wills. It is conceded that decedent executed a will which she brought with her and which Mr. and Mrs. Fitch witnessed. The witnesses to the will are disinterested. Both testified that the will which decedent signed and which they witnessed consisted of several sheets of paper; the number of which or the manner in which they were attached neither noticed. Decedent retained possession of the executed document.

Decedent died on April 22, 1938, at the age of eighty-one years. On that day there was found in her home in a box containing an assortment of papers the document probated as her will which consisted of nine sheets of paper fastened together at the top by five metal clips. The box containing these papers was delivered to one of the executors and by him filed in the surrogate's office. These nine sheets which were unnumbered were entirely in the handwriting of decedent except the attestation clause and the words, " In witness whereof." Concededly the attestation clause and the quoted words are the handwriting of Mr. Fitch. The signature of decedent on the ninth page is at the end of the will and the document is properly attested.

It is not claimed that decedent was incompetent or that she was subject to undue influence. The only question is whether the different sheets of paper which were filed for probate were part of the will at the time it was executed. Contestants assert that they were not.

An analysis of the will is important. The first four pages direct the payment of her debts and make gifts and legacies totaling about $11,000, and also make gifts of specific articles to friends and relatives. In these four pages she disposes of all of her property except her farm and the gift of certain books to the Groton Goodyear Library. On page 5 she makes the gift of the books to the library and makes a gift of the farm but leaves the devisee of the farm unnamed. On page 6 she directs that any residue go to the Home for the Aged at Groton. The 7th and 8th pages are duplicates of the 5th and 6th pages except that one Devlin is made the devisee of the farm. Pages 5 and 6 are clearly surplusage and were evidently worksheets attached to the others by mistake.

A careful reading of this will indicates that decedent was engaged in its preparation for a long period of time. It is a clear and intelligent disposition of her property. The objects of her bounty comprise, among others, intimate friends, the church with which

she was affiliated, the cemeteries in which her deceased relatives were buried and the Masonic lodge of which her brother was a member. Certainly there is nothing unusual or unnatural in the disposition she made of her own property.

There is no proof in the record to support the assertion of appellants that these various sheets of paper probated as decedent's will were not attached at the time of execution. Neither is there any proof that the will was altered by the withdrawal of any of the separate sheets or the insertion of others after the execution.

Among the gifts devised on the 4th page of the instrument appears the following: " To L. L. Allen of Watertown, N. Y. the Book called the Troubles in Kansas also papers of Allen genealogy."

Appellants urge that the making of this gift is a positive indication that that particular page was written long after the execution of the will, because they assert that Miss Allen had no copy of the genealogy prior to 1934. There is no credible evidence to substantiate that assertion. One Bush, who worked as a tenant on decedent's farm, testified that a relative visited decedent annually and that he left the genealogy there in 1934. This witness also testified that in 1937 he overheard decedent talking with Mr. Allen about the genealogy and that the latter expressed a desire for it and was assured by decedent that he would receive it. The testimony of Bush is contradicted by the fact that in 1936 decedent gave to Dr. Stearns, a relative, a document received in evidence, which is substantially a copy of the will. That document is likewise dated November 15, 1928. In that instrument the same provision was made for a gift of the genealogy to Mr. Allen. There is no proof in the record that the Allen genealogy was not in existence in 1931. The surrogate rejected the testimony of Bush and no plausible reason suggests itself why we should credit his fanciful story in order to strike down this will. Furthermore the proof shows that when the will was offered for probate Mr. Allen was alive and available as a witness and that contestants failed to produce him. Even if we assume that the gift to Mr. Allen was made after the execution of the will that would not act as a revocation of the entire will. (*Matter of Ackerman,* 129 App. Div. 584; *Matter of Curtis,* 135 id. 745; *Matter of Wood,* 144 id. 259; *Lovell* v. *Quitman,* 88 N. Y. 377.)

The atmosphere of the testamentary instrument before us in which all the disposing provisions are wholly in the handwriting of testatrix is such as to dispose the judicial mind to accept it as her will with less strictness in the proof of a compliance with statutory formality than applies in other cases.

Loose sheets of paper may be admitted to probate as a will. (*Matter of Field*, 204 N. Y. 448; *Roche* v. *Nason*, 105 App. Div. 256; affd., 185 N. Y. 128; *Matter of Maginn*, 281 Penn. St. 514; 127 A. 79; *Matter of Sleeper*, 129 Me. 194; 151 A. 150; 28 R. C. L. 111, 112; 68 C. J. 639.)  *Matter of Maginn* (*supra*) is authority for the proposition that a will may be written on several detached or loose sheets and if they can be coherently read as a will and are connected by their internal sense it will be given effect although there is confusion in the order of arrangement.  In that case the court said that the persuasive element in favor of a will written on loose unconnected sheets is material sense, the correlation of thought, identified and carried through each loose sheet.  In *Matter of Sleeper* (*supra*) the Supreme Judicial Court of Maine said: " It is well settled law that it is not essential to the validity of a will that the several sheets of paper on which it is written be fastened together in any manner."  The presumption is that all. changes which decedent made in the will in question were made before the execution. (*Crossman* v. *Crossman*, 95 N. Y. 145.)  In *Roche* v. *Nason* (*supra*), a case involving a contested probate, this court said: " The will in this case consisted of four pages of type-written matter, fastened together, and although the fastening was not sufficiently secure to prevent the possibility of fraud by changing the sheets of which it consists, the presumption where sheets of paper are bound together constituting a will at the testator's death, is that the same sheets were so bound together at the time of its execution (30 Am. & Eng. Ency. of Law [2d ed.], 603), and there is not the slightest evidence in this case to overcome such presumption. The will and codicil are continuous in their provisions; they are each signed at the end thereof by the testator, and then follows the attestation clause which was read aloud to and signed by the witnesses, and on one of the other three pages of the will are the initials of the testator where an interlineation was made.  There is not a suspicious circumstance or fact affecting the execution or production of the wills or the codicils, but the instruments bear every indication of being the same at the time of probate that they were when signed by the testator and his witnesses."

In *Matter of Field* (*supra*) the Court of Appeals, in speaking of a holographic will, said: " The position of the courts below, however, finds some support in the adjudged cases, for we have gone far to protect testators from the danger of imposition and fraud through unauthorized additions and changes in their wills. That danger does not exist when, as in this case, the will is holographic, and while we do not regard that fact as controlling, it is worthy of remark that none of the six numbered sheets could have

been changed without the co-operation of the testator himself. While the pins could be removed and other sheets substituted, this is true of many wills written on different sheets and fastened together by rivets or tape. There is no statute forbidding the use of separate sheets or directing how they shall be joined together. Cases where wills have been altered after execution are very rare, as the records of the courts show, while cases where the intention of the testator has been wholly defeated by a rigid construction of the statute requiring subscription at the end of the will are alarmingly frequent."

In the instant case as in the *Field* case no change could have been made in the executed document except by testatrix herself. The language in that case is peculiarly applicable to the facts in this case.

The retention of possession of the will by testatrix is also a strong circumstance in favor of granting probate. (*Wyman* v. *Wyman*, 118 App. Div. 109; affd., 197 N. Y. 524.) Every presumption is in favor of sustaining this will. In the English case of *Rees* v. *Rees* ([L. R.] 3 Pr. & Div. 84) the court said: " If any theory consistent with the validity of the will can be suggested, which appears to the court to be as probable as the theory on which the argument for its invalidity is based, the will as found must be maintained." That statement is but the application to testamentary papers of the general principle applicable to all contracts; presumptions are indulged in to support, not to defeat them.

The decree of the Surrogate's Court should be affirmed, with costs to respondents payable out of the estate.

CRAPSER, BLISS and FOSTER, JJ., concur; HILL, P. J., concurs in a separate memorandum.

HILL, P. J. (concurring). Decedent executed, published and declared the last sheet and certain attached sheets of paper comprising Exhibit A as her last will and testament, complying in all respects with the Decedent Estate Law (§ 21). Each of the witnesses to the will is disinterested and the testimony they gave is entitled to full credence. Each recalls that the will which the decedent signed and which they witnessed consisted of several sheets — how many or the manner of fastening neither took notice. Thus the decedent died after making some kind of a last will and testament. Exhibit A was found in her receptacle for papers. The last page, at least, was a part of her duly executed will.

This contest involves section 34 of the Decedent Estate Law which has to do with the revocation or alteration of a will. There is no proof or assertion that the will was altered by the with-

drawal of any of the separate sheets, thus we are concerned solely with the asserted additions of provisions after the execution. The evidence, other than the general appearance of the will, has to do with an unimportant legacy appearing on page 4. "To L. L. Allen of Watertown, N. Y. the Book called the Troubles in Kansas also papers of Allen genealogy." The document offered for probate was executed on May 18, 1931. In June, 1934, a relative brought to decedent typewritten sheets of paper which it is asserted she spoke of as a genealogy of the Allen family and of which she procured copies. Miss Allen would not have revoked the entire will even if she had added a new page 4. (*Lovell* v. *Quitman*, 88 N. Y. 377; *Matter of Wood*, 144 App. Div. 259; *Matter of Curtis*, 135 id. 745; *Matter of Ackerman*, 129 id. 584.)

The circumstance concerning the typewritten sheets of genealogy does not negative the possession by Miss Allen prior to the execution of the will, of some documents or papers which to her mind comprised the genealogy of the Allen family. Another irregularity of the document is that pages 5 and 6 apparently are the work sheets, with certain omissions which appear in the final draft, pages 7 and 8. It is not hard to imagine that this elderly woman, by error, included the work sheets with the finished product. In *Matter of Van Woert* (147 App. Div. 483; modfd. and affd., 207 N. Y. 756; 176 App. Div. 940; affd., 222 N. Y. 527) one of the two typewritten sheets had been mutilated and changed, and they were no longer attached as at the time of execution, yet the document was admitted, as nothing was proven showing a revocation. This will is holographic, the sheets were joined in a bungling manner, but the text followed the paging.

The decree of probate should be affirmed. (*Matter of Wood, supra*).

Decree affirmed, with costs to respondents, payable out of the estate.