## Jones *et al. vs.* Habersham *et al.*, executors.

[The following case was argued at the last term and the decision reserved. Jackson, Justice, being disqualified on account of re'ationship to some of the plaintiffs in error, did not preside, and Hon. George Hillyer, judge of the superior courts of the Atlanta circuit, was designated by the governor to take his place.]

1. By the witness act of 1866 and those provisions of the Code relative to the attestation and probate of wills, no person is disqualified from being a subscribing witness by reason of interest. If a subscribing witness is also a legatee or a devisee under the will, the witness is competent, but the legacy or devise to him is void; the other parts of the will stand. If the interest of a subscribing witness be indirect or consequential only—as that of a citizen who is rated for taxes, or a pew-holder in a church, or member of a society—where the will makes bequests for the benefit of the poor of the county, or to charitable uses of such church or society, and by reason of its indirectness and uncertainty, the precise interest of such subscribing witness cannot be measured or ascertained so as to lapse into the estate, then the interest of the witness still does not disqualify him, but goes to his credit only.

2. Where the heirs at law of a testatrix are remote collaterals, and the legal question as to which of two sets of contestants be next of kin, is involved under the state of the law and rulings on the subject in doubt and difficulty, the mere fact that the testatrix, though knowing both contestants and their relation to her, yet had the prevailing doubts, or even was mistaken in the matter of law at issue, would not make the will inoperative as executed under a mistake of fact touching the existence of the heirs at law within the meaning of section 2403 of the Code.

3. Where a will in one of the clauses thereof contained this provision, to-wit: "Item sixteenth—I hereby give and bequeath to such persons as I may name and indicate on a list to be signed by me, and folded up with this my will, and in the proportions and of the classes therein set forth, all my silver ware and plate of every description, said list to be taken as part of this my will and testament, and said persons therein named to be legatees under this clause or item of my will," and after the death of testatrix a paper answering the description contained in said item, except that it bore date previous to the date of the will, was produced and filed with the will when offered for probate; and upon *caveat* filed the finding was in favor of the propounders generally, the petition of the executors, the citation issued thereon, the verdict and the judgment making no special mention of said collateral writing as included in the probate; and neither in the *caveat*, nor in a subsequent motion for new trial by *caveators*, nor in their bill of exceptions to this court, was

any question made touching the indentity of said collateral writing, nor as to whether the same in reality was propounded, or under the law and the facts could be propounded and proven and put to record as part of the will itself; it is too late to raise these questions for the first time on final argument in this court.

4. A will written upon separate and detached sheets of paper may still be a good will, if the writing propounded taken as one entire document, is in all its parts the identical testament made by the decedent. Where the whole will is in writing, and all the forms of law were fully complied with for its execution and attestation, and the question of the identity of the several sheets propounded, with those on which the will was thus executed and attested, was fully and fairly submitted to the jury, the finding should not be disturbed unless some rule of law has been violated.

5. In this case the verdict is contrary neither to law nor the evidence, but plainly accords with both.

Witness. Wills. Practice in the Supreme Court. New trial. Before Judge TOMPKINS. Chatham Superior Court. May Term, 1878.

Reported in the opinion.

W. W. MONTGOMERY; J. R. SAUSSY, for plaintiffs in error.

JACKSON, LAWTON & BASINGER; HARTRIDGE & CHISHOLM; CHARLES C. JONES; WM. GRAYSON MANN, for defendants.

HILLYER, Justice.

This is the second time the present case has been brought to this court. (See 59 *Ga.*, 11.) On the former trial, the jury in the court below found against the will, and on the motion of the propounders, the court below granted a new trial. The caveators brought a writ of error, and this court affirmed the judgment. The scope of the litigation originally existing between the parties was greatly narrowed by the former adjudication, and to that extent it is unnecessary to be recounted here.

The second trial was had in Chatham superior court at the May term, 1878. It appears in the record that Mary

Telfair died in May, 1875, and that a few days subsequent to her death, a paper purporting to be her last will and testament, was presented to the ordinary of said county, and along with it there was filed on the fifth of June, of that year, another writing purporting to be the paper referred to in one of the clauses of said will, in the following language, to-wit:

"Item 16. I hereby give and bequeath to such persons as I may name and indicate in a list to be signed by me and folded up with this, my will, and in the proportions, and of the classes therein set forth, all my silver ware and plate of every description, said list to be taken as a part of this, my will and testament, and said persons therein named to be legatees under this clause or item of my will." ·

The will proper had three subscribing witnesses, to wit: Gen. A. R. Lawton, Jas. B. Reid, and Wm. J. Marshall. The collateral writing in question also had three witnesses, namely: A. R. Lawton, W. J. Marshall, and John S. Coburn, and in other respects answered the description called for by said 16th item, except that it bore a previous date.

On the seventh of June, in said year, A. R. Lawton made affidavit, for probate in common form, to said collateral writing along with the will; and Jas. B. Reid made affidavit for the probate of the will, in common form, describing it as "the annexed instrument of writing, purporting to be the last will and testament of Mary Telfair, late of Chatham county, deceased." There is nothing in the record to show that there was any judgment made in the court of ordinary admitting the will to probate in common form; but on the seventeenth day of June, 1875, Wm. Neyle Habersham and Wm. Hunter, the executors named in the will, filed their petition in the court of ordinary, praying "that the said last will and testament may be admitted to probate in solemn form, and that citation issue accordingly to the heirs at law," naming them. Pursuant to said petition, a citation issued, was duly published and

served.   A *caveat* was filed, originally by the present *caveators* and certain other persons, and upon various grounds not material to be here stated.   But in the subsequent course of the proceedings, the pleadings on the part of the *caveators* were amended by the withdrawal of the *caveat*, as filed by or in behalf of said other persons, and by striking out all former grounds of the *caveat*, and, in lieu thereof, filing the following. in substance, as the *caveat* of the present plaintiffs in error, to-wit : George Noble Jones, and others : "1. That the said will was not attested and subscribed in presence of said Mary Telfair by three competent witnesses.   2. That said Mary Telfair was under a mistake of fact as to the existence of her heirs at law. 3. That she was not of sound and disposing mind and memory.   4. That at the time of her death, said testatrix did not know that the *caveators*, George Noble Jones and others, and Mary E. Thompson, were her heirs at law." And, as before stated, at said June term of Chatham superior court, the parties went to trial on the issue of *devisavit vel non*, under the pleadings as thus made.

The three subscribing witnesses to the will proper, viz : Gen. Lawton, Dr. Reid, and Mr. Marshall, were examined as witnesses, and from their testimony it appeared that the will was executed, attested and published under all the forms of law requisite to make a good will.

From their testimony and that of other witnesses, the soundness of mind and memory of the testatrix, her knowledge of the contents of the document, and all other matters at issue, were sufficiently established to justify a verdict in favor of the propounders, and it is unnecessary to set out the testimony at large for the present purpose.

It appeared that at the time the will was signed by the testatrix and the subscribing witnesses, it was written on several separate sheets of legal cap, four pages to each sheet, and the attestation clause on the last sheet recites that the will was written on fifteen pages of writing, the seventh page being blank.

Just how much of the will was on the last sheet, or what particular bequests were written on it, and what on the other sheets, does not appear. The testatrix and subscribing witnesses signed at the foot of the whole will where the attestation is written, and in addition to this, the testatrix signed on the margin at the foot of the other sheets, and the fact that she did so sign on the margin or margins is stated and testified by each of the subscribing witnesses.

The testimony is silent as to whether the above mentioned collateral writing was at that time present with the fifteen pages of writing before mentioned, or whether, in point of fact, it was then and there, simultaneously with the other steps taken in executing the will, "folded up with" said will by the testatrix, as recited in the sixteenth item above quoted, in her presence, or by her direction; but General Lawton testified that, after the signing of the different sheets, they were taken by him to his office, folded up, and fastened together. and locked up in the vault of a bank, and after the death of the testatrix he produced the same to Mr. Geo. Noble Jones, as one of the heirs at law, and to Messrs. Habersham and Hunter, the executors, and read the will to them.

The will contains certain bequests for the benefit of the poor of Chatham county, and other bequests to charitable uses, bequests to the Presbyterian church, the Union Society, and the Historical Society, of Savannah. It appeared in the cross-examination of the subscribing witnesses, that Mr. Marshall was neither a member of any of said societies, nor owned any property in Chatham county, nor was rated for taxes there; that Dr. Reid was a member of the Historical Society; that Gen. Lawton was a pew-holder in the said Presbyterian church, and also a member of the Historical Society, and that both he and Dr. Reid were property-holders in Chatham county, and were rated, as such, for taxes. The constitution and nature of the organization of none of these societies, or of the church, is set out in the record; and the nature of the interest which a pew-holder

in the church, or a member of the society has therein, is not made to appear.

At the trial, objection was made to the competency of these gentlemen to testify as subscribing witnesses, on the ground of alleged interest in said societies and church, and of interest as tax-payers, in the support of the poor of said county, for which support the will in part provides. The court admitted their testimony, holding them competent. The *caveators*, in writing, asked the court to charge various legal propositions, stating the law, as contemplated by them in their grounds of *caveat* above set forth, and as touching the alleged incompetency of said subscribing witnesses, but making no distinct request as to the effect of such alleged interest upon the credit of the witnesses, though competent. The jury returned a verdict in the following form :

" We, the jury, find the paper propounded to be the last will and testament of Mary Telfair. June 26, 1878. John P. Robinson, foreman." And thereupon a judgment was entered "that the said will was the last will and testament of the said Mary Telfair, and the same being now proved in solemn form, that it be admitted to record," etc.

There was a motion for a new trial on various grounds ; first, that the verdict was contrary to the evidence ; secondly, that the verdict was contrary to law ; thirdly, that the court erred in refusing the written requests to charge made by the *caveators ;* fourthly, in charging as follows : "If the jury should find that the *caveators* were the real heirs at law of Miss Telfair, the fact that she did not so consider them, or that she was ignorant of the law concerning who were her real heirs, that these facts did not, under section 2403 of the Code, constitute such a mistake of fact as to the existence or conduct of her heirs at law as makes the will at all inoperative ;" and again, in charging as follows : " I also charge you that if you should find that one or more of the witnesses to the will are members of the Presbyterian church, or pew-holders therein, or are members of the Georgia Historical Society, or either of the societies which

are beneficiaries under the will of Miss Telfair, or are property-holders and tax-payers in the city and county, they are not, by either of these facts, rendered incompetent witnesses to the will, and the will is not void or invalid by reason of these gentlemen being witnesses who are church members, pew-holders, and members of the society as aforesaid."

And again, in charging as follows: "In the opinion of the court, the will is perfectly valid and legal in all its terms and provisions, and is a will that in law can and ought to be proved and carried into effect, provided the testatrix was of sound and disposing mind and memory, and was not acting under any mistake of fact as to the existence or conduct of her heirs at law, and if you find it legally executed."

And again in charging as follows :

" If, when the will was signed, the sheets of paper were not attached together, but were fastened by one of the witnesses after he had taken them to his office, it does not invalidate the will, if you find all the other facts necessary to make a will, and that the will for probate is composed of the very sheets of paper signed by the testatrix, and in just the condition they were when it was signed."

The motion for new trial was accompanied by brief of evidence as required by law, and after argument had, the motion was overruled.   The present writ of error was presented seeking to reverse that decision.

The bill of exceptions contains three assignments of error,—first, that the court erred in refusing a new trial on the first and second grounds set out in said motion for new trial ; second, that the court erred in refusing to give the charges requested by the *caveators* as set forth in the third ground for new trial, and again in refusing a new trial for such error ; third, that the court erred in giving the charges complained of in the fourth ground for new trial, and again, in refusing to grant a new trial for such error.

1.  Under the state of facts shown by this record, what-

ever doubts may have existed prior to the witness act of
1866 as to the competency of the subscribing witnesses,
Dr. Reid and Gen. Lawton, or either of them, (or even if it
be admitted that, according to the authorities cited in the
argument as ruling upon the state of the law prior to that
time, in this country and in England, said persons would be
incompetent as subscribing witnesses); yet, when we look to
those provisions of the Code, as they existed on the subject
of the attestation and execution of wills, at the time the wit-
ness act of 1866 was passed, and notice the broad and sweep-
ing terms in which it is declared in said act that " no per-
son offered as a witness shall be excluded by reason of in-
capacity from crime or interest, or from being a party, from
giving evidence, either in person or by deposition, accord-
ing to the practice of the court, on the trial of any issue
joined, or of any matter or question, or on any inquiry aris-
ing in any suit, action, or proceeding, civil or criminal, in
any court, or before any judge, jury, sheriff, coroner, mag-
istrate, officer or party, having by law, or consent of the
parties, authority to hear, receive and examine evidence ;
but every person so offered shall be competent and compel-
able to give evidence on behalf of either or any of the par-
ties to the said suit, action or other proceeding, except as
follows." Then follow the five exceptions set out in the
statute, neither of them covering the case of a subscribing
witness to a will. Prior to the date of said act, it was
already provided by section 2417 of the Code, that a legatee
or devisee under a will was a competent witness, but that
the legacy or devise to him should be void, and we hold
that the act of 1866 is not in conflict with, and does not re-
peal, this provision ; but by a proper construction of said
act, the subscribing witness is competent without reference
to the question of what shall become of his legacy. By
section 2417 his legacy would doubtless lapse into the gen-
eral estate and be disposed of as any other clause or pro-
vision of the will may indicate, if there be any covering
it, or as the law may otherwise require. It was urged at

the argument that the interest here in question, as, for instance, that of a tax-payer, was of a nature that could not lapse—that the tax-payer could not avoid being benefitted by having the poor rates of the county lessened if the will was set up. But for the present purpose it is sufficient to know that by the law as enacted by the witness act of 1866, and the provisions of the Code on the subject of wills, the witnesses *were competent*, under the facts appearing in the record, no matter what their interest or the nature of it. The judge in the court below so ruled and we hold that he ruled correctly.

2. At the time the will was executed, and, to my mind, for years previously, and since then, until the decision was rendered by this court as before referred to, in the 59 *Ga.*, 11, it was a mooted question in Georgia as to what was the correct rule by which to count the degrees of consanguinity, and to ascertain who were the next of kin where contestants were collateral as remote, and belonging to different branches of kindred, as were those in the present case.

On the trial, the caveators sought to show that at the time she made the will, and on to her death, the testatrix did not know that Jones and others were her heirs at law, or that she was under a mistake touching the same.

The evidence, however, plainly shows that she was well acquainted with both sets of contestants, to-wit: the present caveators, who, after much controversy in the courts on the legal question, were finally held and decided to be the next of kin; and that she was also well acquainted with her great-nieces, the other contestants, viz: the children of Mrs. Alberta Wetter, who, in said final adjudication, were held not to be the next of kin; and that she also knew the relationship which these several contestants bore to her, and how their kinship respectively was derived.

It is not strange that the testatrix should have had the prevailing doubts on the law question involved; for it was a question about which the ablest lawyers and the most diligent courts have differed, and which it took a vast amount

of legal research, the production of abundant authority, the most laborious arguments by counsel, and careful consideration by this court to settle; at least, much of such was expended before it was settled.

It would indeed be strange, if the testatrix had not had the same doubts by which lawyers and courts were so long troubled, and for her to have been able, by herself to solve this intricate and difficult problem, would have argued a degree of capacity and mental power far beyond that which the law requires as sufficient to make a will.

Section 2403 of the Code is in these words, to-wit: "A will executed under a mistake of fact, as to the existence or conduct of the heirs at law of the testator, is inoperative so far as such heir at law is concerned, but the testator shall be deemed to have died intestate as to him."

This rests on the principle of mistake of fact as to the existence of the heir at law, and not on a mistake of law as to any doubtful question of the rules of descent. The evil it seeks to remedy is, that where a testator has a kinsman, so related to him by blood as would naturally be an object of his bounty, and the testator is under a mistake, and believes that such heir is dead, or does not exist, and for that reason gives the inheritance to other persons, when, if the existence of such heir had been known, he would probable have been an object of his kinsman's bounty.

By the section above quoted an heir who should become the victim of such a mistake would be relieved.

But where the testatrix knows such kinsman, and knows his relationship to her, and is in a situation herself to have weighed and decided the claims of blood relative to the particular individual in question, and with a full knowledge of all these facts, bequeaths the property to other persons, neither the letter nor the spirit of the law under consideration applies to the case. The judge in the court below so ruled, and we hold there was no error therein.

3. It will be observed in reference to the record, that in no part of the pleadings on either side, either prior to the ver-

dict, or after the verdict, or in the bill of exceptions, was any question raised as to whether the collateral writing referred to need to have been propounded, or was, in fact, propounded and sought to be admitted to record as a part of the will; or as to whether, under the law and the facts, the same could be thus propounded, proven, and admitted to record.

No such question was made, or in any manner, directly or remotely, mooted in the court below, and no such question was decided by that court.

This is a court of errors and cannot take original cognizance of new questions.

These were raised for the first time on the final argument by the counsel for the plaintiffs in error here. We hold that said questions are nowhere properly made in this record, and this court declines either to entertain or to decide them.

Whether it was necessary or proper. that said collateral writing be propounded with the will, or whether the judgment admitting the will of Mary Telfair to record in solemn form, includes the said collateral writing or not, as part of the will, and constitutes an adjudication, operating as an estoppel as against these caveators in respect thereto, we express no opinion and make no decision. The judgment is of course final as to all that it embraces, but whether it embraces the said collateral writing, or need embrace it, is a question not made in this record.

4. There is no force in the objection made at the trial, and insisted on in argument here, that the will was written on separate and detached sheets of paper.

The will with which the law deals is to be sought for and to be found in the mind and intention of the testatrix. The writing is but the evidence of that intention. It is to the oneness, sufficiency and completeness of the testamentary intent and scheme as expressed and evidenced by the writing, that the law looks. It is not the writing that makes the will legal and binding, but the testamentary intent

crystallized and expressed in the writing. It would be a dangerous rule to say that all wills must be written on one continuous sheet of paper, or that they must necessarily be tied and fastened together with tape and a waxen or other seal. In the state of society, and the condition of learning among our people generally, and the facilities for writing and penmanship and clerical skill, very different standards of neatness and proficiency exist in different communities, and with different individuals, touching the preparation of such documents ; and there is no known rule as to any precise manner in which such papers shall be bound or attached together, or requiring a will to be written all on one sheet.

It is best for convenience, of course, and controversy is less liable to arise, if the document is neatly, properly and securely fastened together before the testator and the witnesses sign it. But it is by no means essential, and to require it would be to upset a very large percentage of wills now held to be of force in this state.

The true question is, was the identical writing—the document—in all its parts, finished and completed as the testatrix wanted it, and as an entire grammatical or rhetorical composition, propounded at the trial, the identical writing as was attested and signed by the testatrix and the witnesses, under the forms necessary to constitute a good will. In the present case the question of the identity of the several sheets was fully and fairly submitted to the jury under the proof, and they found on this question in favor of the propounders.

The testamentary scheme contained in the will, displays, on the part of the testatrix, a broad philanthropy, great knowledge of the society and times in which she lived, deep foresight in choosing the objects of her bounty, and the measures for its faithful and enduring application, in fact, unmistakably the product of a well-ordered and strong mind. It would be hard to find a will in which so large an estate (over $600,000) is bestowed to varied objects of culture, charity and religion, personal regard and kinship, though remote and collateral, and in which will, and every clause of it, *judgment* is more apparent.

The evidence, both that afforded by the will itself and all the testimony, supports the finding; the judge who presided at the trial was satisfied with that finding, and we decline to disturb it.   Upon the whole case, taken altogether in all its parts, both of law and of fact, the verdict was neither contrary to the law or the evidence, but accords with both.

Judgment affirmed.