SHERBURNE H. SLEEPER, APPL'T

AND

EBEN F. LITTLEFIELD, APPL'T

FROM DECREE OF JUDGE OF PROBATE.

Waldo.        Opinion July 9, 1930.

*Francis W. Sullivan,* for Sherburne H. Sleeper, Appl't.
*Hugh D. McClellan,*
*Dunton & Morse,* City National Bank, Exr.
*Buzzell & Thornton,* City of Belfast.
*John F. A. Merrill,* St. Margaret's Chapel & Protestant Episco-
pal Bishop of Maine.
*Locke, Perkins & Williamson,* Eben F. Littlefield, Appl't.

SITTING: WILSON, C. J., DUNN, STURGIS, BARNES, JJ. CONCURRING.
PATTANGALL, C. J., FARRINGTON, J. DISSENTING.

WILSON, C. J. On June 8th or 9th, 1926, Maud Gammans, a
resident of Belfast, and an elderly lady, came to the banking rooms
of the City National Bank of Belfast and entered the coupon room
which is connected with the safety deposit vaults conducted by the

bank. She called in the cashier of the bank, who found her there with her safety deposit box open on the table furnished for the convenience of the bank's customers and lying on the table in front of her a package containing a number of sheets of paper of the size ordinarily used by ladies for social correspondence.

She then indicated to the cashier that the papers before her contained her will and requested him to call in two others to act with him as witnesses, which he did, calling in two women employed by the bank, who it appears were on very friendly terms with Miss Gammans and familiar with her handwriting. After the two young ladies entered the coupon room, Miss Gammans handed one or more of the sheets of the papers lying before her on the table to the cashier, and asked him to examine the sheet of paper on top, which contained only the usual clause of execution and of attestation to see if it was all right or in proper form, which he did, and pronounced it in correct form. The papers were then placed on the shelf in front of her with the page containing the clause of execution and attestation on top. She again declared it to be her will, signed her name and the witnesses all signed in the proper place, observing the usual formalities to conform to the statutes of this state. They then departed, leaving her there alone with her papers.

No one of the witnesses, so far as the evidence discloses, examined with any care any other of the sheets of paper than the one on which they signed, or could tell how many there were, although one of the witnesses testified that the last page was, at the time of the execution, numbered "28," but all testified that the sheets of paper lying on the coupon shelf which she declared to contain her will looked like those presented for probate as her will.

Miss Gammans died July 10, 1928. There was found in her desk a sealed envelope which was brought to the bank, and when opened was found to contain another unsealed envelope on which had been typewritten: "Will of Maud Gammans," and in which were twenty-eight sheets of paper, such as are ordinarily used by ladies for their social correspondence, and on each of which was printed at the top, "Miss Maud Gammans, 6 Church Street, Belfast, Maine"; and which, though not fastened together, were folded lengthwise and numbered in the upper right hand corner in consecutive order

from one to twenty-eight. The last sheet, numbered twenty-eight, was the one executed by her in the presence of the cashier and the two witnesses on June 8 or 9, 1926, and the remainder from one to twenty-seven, inclusive, provided for the disposition of her entire estate.

In the same envelope was also a small book marked "A" on the inside of the cover, and contained directions as to the disposal of certain articles of personal property. Among the provisions in the papers offered as her will, on page numbered twenty-six, was a direction to her executor to distribute among her friends and carry out the directions "as will be found in a little book marked A on inside cover, which will be found with my will."

The City National Bank as the executor named on one of the pages petitioned for the probate of the twenty-eight sheets of paper as the last will and testament of Maud Gammans, but did not include in its petition any reference to the little book "marked A."

The probate of these papers as a will was opposed by two or more of the heirs of Miss Gammans, on the ground that it was not proven that they were all part of the instrument executed by her on June 8 or 9, 1926, and lacked such coherence and adaptation of parts necessary to warrant a finding that they were all part of one instrument. It was also contended that if the will was allowed the little book marked "A" should also be allowed as part of the will, the effect of which would have been to destroy the will, as the two young ladies who acted as witnesses were named as beneficiaries in the little book marked "A."

The Judge of Probate after hearing allowed the twenty-eight sheets of paper as her will, but rejected the book as a part of the will. From his finding, the appellants, Sleeper and Littlefield, appealed, alleging as reasons of appeal: (1) that at the time of the execution of said alleged will, the said Maud Gammans was not of sound mind or of sufficient mental capacity to execute said alleged will; (2) that said alleged will if executed by said Maud Gammans was executed by her through undue influence, and is not the will of said Maud Gammans; (3) that said alleged will was not signed by the said Maud Gammans or by some person for her at her request

and in her presence; (4) that said alleged will was not subscribed in the presence of Maud Gammans by three credible witnesses not beneficially interested under said will; (5) that the said instrument purporting to be the last will and testament of said Maud Gammans was not legally executed and is not the same instrument alleged to have been executed by the said Maud Gammans and alleged to have been subscribed in her presence by the alleged witnesses thereto; (6) that by the terms of the alleged will there is incorporated therein and made a part thereof by said Maud Gammans a little book marked "A" on the inside cover; that two of the witnesses to said alleged will to wit: Alberta W. Farnham and Edna D. Crawford were at the time of the execution of said alleged will beneficially interested under said will; (7) that the said instrument is not the instrument executed by said Maud Gammans on June 8 or 9, 1926.

The appeal was heard in the Supreme Court of Probate at the January Term, 1929. At the hearing, the first, second and third reasons of appeal were abandoned. Counsel relied on the 4th, 5th, 6th and 7th, in substance claiming that it was not proven that the twenty-eight sheets of paper presented to and admitted to probate by the Probate Court as the last will and testament of Maud Gammans were the same papers that were in the coupon room when page numbered twenty-eight was executed and witnessed on June 8 or 9, 1926, or contained such internal evidence of coherence to entitle loose sheets of paper to be probated as a will, and, if so, that the little book marked "A" was properly a part of the will; and, therefore, the execution of the will was not witnessed, as required by the statutes, by three persons not beneficially interested therein.

The Justice presiding, however, ordered and decreed: (1) that the twenty-eight sheets of paper numbered from one to twenty-eight consecutively be allowed as the last will and testament of Maud Gammans; (2) that the book marked "A" was not a part of said will under the rules of law relating to the incorporation in a will by reference of a paper, document or memorandum, and thereupon dismissed the appeal, and remanded the case to the Probate Court for further proceedings.

The case comes to this court on exceptions to this decree by each of the appellants from the decree of the Judge of Probate and to the admission of certain testimony to the effect that the disposition of her estate as contained in the twenty-eight sheets of paper was all in the handwriting of the testatrix.

We think there is no merit in the exceptions to the admission of the testimony. There is nothing in the decree to show that the Justice presiding based his decree upon this evidence, and if, as alleged by counsel, it was immaterial, it did no harm; but we think it had sufficient bearing to render it admissible on the question of whether, if properly executed, it was her will, which the proponents were obliged to prove anew in the Supreme Court of Probate, and, at least, as tending in some degree to show that it was a connected and complete instrument.

Likewise there is no merit to the exception based on the ground that the rejection of the "little book marked A" as a part of the will by the judge below was error. If we were to lay down the rule in this state that papers or memoranda may be incorporated in a will by reference, the evidence in this case comes short of proving that the book "marked A" was in existence and compiled at the time the will was executed. *Fitzsimmons* v. *Harmon*, 108 Me., 456, 458. In fact there is internal evidence in the book itself that it was not. Where such incorporation by reference is permitted, compliance with the statute of wills requires that the paper or document sought to be incorporated by reference must be complete and in existence at the time and clearly described in the will. *Bryan's Appeal*, 77 Conn., 240; *Newton* v. *Seaman's Friend Soc.*, 130 Mass., 91; *Bemis* v. *Fletcher*, 251 Mass., 178; Est. of Young, 123 Cal., 339; 68 L. R. A., Anno. 354. This Court, therefore, can not say that the Court below erred as a matter of law in finding that the necessary conditions did not exist for incorporating this book into the will by reference.

The remaining grounds of exception can be stated as a single proposition, viz., that there was no evidence of certain essential requisites on which to base a finding that the twenty-eight sheets of paper offered for probate as the last will and testament of Maud Gammans were all present at the time of the signing of page num-

bered twenty-eight on June 8 or 9, 1926, and were executed by her as one instrument as and for her will.

It is well settled law that it is not essential to the validity of a will that the several sheets of paper on which it is written be fastened together in any manner. *Ela* v. *Edwards*, 16 Gray, 91; *Palmer* v. *Owen*, 229 Ill., 115; *Woodruff* v. *Hundley*, 127 Ala., 640; *Barnewall* v. *Murrell*, 108 Ala., 366; In re Taylor, 126 Cal., 97; *Sellards* v. *Kirby*, 82 Kan., 291; Re Johnson, 80 N. J. Eq., 525; Re Swaim, 162 N. C., 213; *Dearing* v. *Dearing*, 132 Va., 178; *Gass* v. *Gass*, 3 Humph. (Tenn.), 278; *Bond* v. *Seawell*, 3 Burr. R. 1773; Wikoff's App., 15 Pa., St. 281; 30 A. L. R., 424.

That such a practice is unwise, furnishes opportunity for fraud through substitution, and renders proof of execution difficult goes without saying, and requires careful scrutiny by the tribunal before which the issue of *devisavit vel non* is tried; yet as the cases cited, which by no means include all the decisions, disclose, wills are frequently allowed written on several sheets of paper, which through neglect or ignorance were never fastened together in any of the conventional methods.

In nearly all the decided cases, however, it is true, there was some internal evidence of relation between the several pages, and the courts have frequently used the expression: "It is sufficient if the several pages are connected by their internal sense, by coherence or adaptation of parts." Some courts have laid down the rule that the evidence of inter-relation or coherence between the several loose sheets of paper must be contained in the papers themselves, Seiter's Est., 265 Pa., 202; that they can not be shown to be part of one instrument by extrinsic evidence or circumstances.

The weight of authority, however, does not seem to favor such an extreme rule. Other courts hold that while coherence and adaptation of parts may alone be sufficient to satisfy the court that loose sheets of paper constitute one instrument, identification by oral testimony of the several pages as being present at the time of execution and accompanying circumstances may also be controlling factors in satisfying the court of the identity of several sheets of paper as the instrument executed by one as his last will and testament, when found together in the possession of the deceased

at his death, no evidence of fraud being offered, or any claim made that any fraud or substitution had been perpetrated. *Bond* v. *Seawell,* supra ; *Palmer* v. *Owen,* supra ; *Dearing* v. *Dearing,* supra ; *Gass* v. *Gass,* supra ; *Ela* v. *Edwards,* supra ; *Jones* v. *Habersham,* 63 Ga., 146 ; In re Swaim's Will, supra ; *Johnson's Case,* supra ; *Harp* v. *Parr,* 168 Ill., 459 ; *Barnehall* v. *Murrell,* supra.

A rule laid down in many of the cited cases seems to cover the essential requirements, viz., that it is sufficient if it appears that all the sheets of paper offered as a will were in the room at the time of the execution by the testator and that the testator intended to execute them as one instrument and as his will. *Palmer* v. *Owen,* supra ; *Harp* v. *Parr,* supra ; *Ela* v. *Edwards,* supra ; *Gass* v. *Gass,* supra ; 1 Williams Ex'rs, 130 ; *Barnewall* v. *Murrell,* supra.

Fastening them together is, of course, the conventional method and is seldom questioned, but identification of each sheet or of a part, accompanied by circumstances from which it can fairly be inferred that all the sheets of paper were present at the time of execution, as well as internal evidence disclosing coherence or adaptation of parts, have also been held to be sufficient in cases where the pages of a will when found were not fastened together. *Bond* v. *Seawell,* supra ; *Gass* v. *Gass,* supra ; *Palmer* v. *Owen,* supra.

This court can not sustain the exceptions in this case simply because of the opportunity that such a will offers for fraud and a violation of the Statute of Wills, none being shown or claimed.

It must not be lost sight of that the case is not before this court for consideration *de novo.* It is here on exceptions, and the question raised by the exceptions to the decree below is not whether the evidence was sufficient to warrant the decree, but whether there was any evidence of the necessary requisites to establish the twenty-eight sheets of paper as the duly executed will of Maud Gammans. *Hazen* v. *Jones,* 68 Me., 343. Its sufficiency was for the Justice presiding below. "If there was any such evidence its sufficiency was a question of fact upon which the finding of the Court is conclusive, not to be reversed by the Law Court." *Eacott Appl't,* 95 Me., 522, 526 ; *Hazen* v. *Jones,* 68 Me., 343 ; *Brooks* v. *Libby,* 89 Me., 151 ; *Small* v. *Thompson,* 92 Me., 545 ; *Gower Appl't,* 113 Me., 156 ;

*Cotting* v. *Tiltón*, 118 Me., 91, 94; *Packard App't*, 120 Me., 556; *McKenzie* v. *Farnham*, 123 Me., 152.

The evidence discloses that twenty-eight sheets of the testatrix's personal correspondence paper, containing a complete testamentary disposition of all her property, were found after her death in an envelope on which was typewritten the words "Will of Maud Gammans," which envelope was enclosed in a larger sealed envelope. The pages were all in her handwriting. Each page when found was signed by her and consecutively numbered from one to twenty-eight. The first page contained the usual introductory clause and the customary provisions for the payment of her funeral charges, debts, expenses of administration, and then follows the declaration: "I hereby dispose of my estate as follows in these sheets of paper." This page was followed by twenty-six pages containing an intelligent and discriminating disposition of all her estate, the twenty-eighth page containing only the clauses of execution and attestation. While the several pages, excepting the numbering at the upper right-hand corner of each page, may not all have been done at the same time, as some were apparently written in ink of different appearance from the others, and while the bequests on each page were complete in themselves, and no bequest occupied more than a single page, and no reference was made on any page to any other page, a considerable number of the pages related to the same subject matter, or contained in logical order provisions for the same general purpose.

The witnesses called to attest her will, while they examined none of the pages except the last, all testified that the pile of papers lying on the coupon shelf at the time of signing looked "just like" or "exactly like" the twenty-eight sheets presented for probate, and one of the witnesses testified that the pages were all numbered at the time of execution. This, however, may have been a matter of inference from the fact that the last page was numbered "28"; as he did not examine any other page than the one they signed, nor could he or the other witnesses tell from their examination at the time the number of pages that were present. The Court, however, may have been satisfied from the testimony, and from an examination of the several sheets of paper, that the last page was num-

bered "28" at the time of execution, and from the circumstances shown and internal evidence, that the other pages also at the time of execution had already been numbered in consecutive order and by Miss Gammans.

If the presiding Justice was satisfied from the evidence that the page on which the witnesses signed was at the time of execution numbered "28," a declaration by the testatrix at that time that the pile of papers before her was her last will — it being also so stated in her handwriting in the attesting clause — is tantamount to saying that her will which she was then executing consisted of twenty-eight pages.

An examination of the twenty-eight sheets of paper discloses that the ink with which the first page is numbered bears no resemblance to the ink in which the body of the first page is written, but has the same appearance as the ink used in numbering all the other pages and in writing the words, "Will of Maud Gammans" at the top of the last page and also the date of the execution and attestation, which in the ordinary course of events would be the last thing done after the will was completed to her satisfaction. There is, therefore, some internal evidence from which in the light of all the circumstances the judge below may have found that the pages had been all numbered prior to its execution on June 8 or 9, 1926; and if there is any evidence that the pages had been consecutively numbered in the hand of the testatrix prior to the time of the execution, it can not be said there is no internal evidence of coherence in the several pages. Its sufficiency is not open to the appellants to question before this court on exceptions to his decree. Slight difference in appearance of the numbers on any of the pages may have been accounted for by the amount of ink on or in the pen, or the manner in which the pen happened to be held at the time.

While no presumption of due execution of a will follows from merely producing an instrument purporting to be a last will and testament, proof that satisfied the Justice below that an instrument was duly executed by a testatrix, that it contained twenty-eight pages, that one was found in her possession at her death which contained twenty-eight pages and consecutively numbered from one to twenty-eight, inclusive, that at the time of execution she had

before her a pile of papers that looked "exactly like" the papers so found and submitted for probate, that the last page was numbered twenty-eight at the time of execution may be sufficient to warrant the court in drawing the inference that all the pages were present when the last page was signed and that it was then in its final form, and especially so if the court was satisfied from the papers themselves and attendant circumstances that the pages were prior to the execution numbered consecutively from one to twenty-eight, and no evidence was offered of any fraud or substitutions. *Gass* v. *Gass*, supra; *Bond* v. *Seawell*, supra; In re Wikoff, Est. 15, Pa. St., 281.

While the Statute of Wills of this state, if not a direct heir, is at least a first cousin to the Statute of Frauds in respect that it requires all transfers of property by will to be in writing, and thus, perhaps, warrants by analogy, at least, an application of the rule that in case of separate sheets of paper to satisfy the statute there must be some internal evidence to connect them together to show that they relate to the same subject matter and to be complete in themselves, the Justice below may have found there was sufficient evidence in the case at bar to satisfy the rule even if it be applicable in its broadest requirements to wills written on several disconnected sheets of paper. Nor is the general rule always strictly enforced even under the Statute of Frauds. There are cases in which parol evidence of contemporaneous facts and of the circumstances in which the parties were, when certain papers were executed, has been received to show the connection between separate papers. *Jenkins* v. *Harrison*, 66 Ala., 345, 360; *Thayer* v. *Luce*, 22 Ohio St., 62; *Beckwith* v. *Talbot*, 95 U. S., 289; Browne on the Statute of Frauds, Sec. 350.

Every page of this will was signed by Miss Gammans. Every page was numbered consecutively and in such a manner that the Court may have found on what he deemed sufficient evidence that it was done prior to the time of the execution; the pages contained a coherent, intelligent, discriminating disposition of her entire estate. With some internal evidence of a completed and unified instrument any parol evidence of the facts and circumstances attendant upon its execution tending to show its due execution as a

single instrument was properly considered by the Court below. *Jenkins* v. *Harrison*, supra.

Again, as the Court observed in *Rees* v. *Rees*, L. R., 3 P. & D., 84, an English case, with reference to the presumption arising from the plight and condition in which a testamentary paper is found after the death of the testator "If any theory consistent with the validity of the will can be suggested which appears to the court as probable as the theory on which the argument for the invalidity is based, the will as found must be maintained." This is but an application to testamentary papers of the general principle applicable to contracts; presumptions are indulged to support not to defeat them. *Barnewall* v. *Murrell*, 108 Ala., 366, 379. It is a well-known policy of the courts to uphold wills and not destroy them. Certainly all the known facts in this case are as consistent with a valid execution of the twenty-eight pages found in Miss Gammans' possession at her death and in an envelope labelled "Will of Maud Gammans" as they are with the theory that the will was only partly completed at the time of execution or that substitutions have since been made therein in case it was complete and all pages present at the time of execution.

The attack upon this will is chiefly based on the contentions that none of the witnesses saw or could identify any of the pages except the last and there was no internal evidence of coherence of adaptation of part and that to permit loose sheets of paper to be probated as a will would promote fraud and affords an opportunity to violate the Statute of Wills by the substitution of pages after execution; but there is no evidence or even claim by the contestants that any fraud or substitution was practiced; nor is it essential that the witnesses should see and examine all the pages of a will at the time of execution, if the Court is satisfied from other evidence or the circumstances surrounding the execution, that all the sheets of paper offered for probate were present at the time of execution. Few wills are executed consisting of more than one page, where the witnesses can testify as to the number of pages or their contents, or actually identify them as the ones present at the time of execution. Such arguments were appropriately addressed to the Court below, but are not pertinent to the issues raised here on exceptions,

if there is any evidence on which the decree may rest, *Palmer* v. *Owen*, supra.

It is also urged that the fact that the pages were so written that one could be withdrawn and another substituted indicated an intent on the part of the testatrix to thus circumvent the Statute of Wills by making changes after its execution without again formally executing it, and this should militate against the allowance of these papers as her will. But it does not appear by any positive evidence that she had such a purpose in mind, or, if she did, that she ever carried it out. It was a very simple matter for her to again execute a will. She was her own scrivener. Witnesses were always available at her bank. So far as it appears, she had no reason to make any change surreptitiously. Again, such a purpose on her part is not to be presumed, but the contrary.

Upon the issue raised by the bill of exceptions we think it can not be said there was no evidence in support of the necessary findings of fact involved in the decree sustaining the will by the Supreme Court of Probate. The presiding Justice found it was sufficient to warrant his findings. Upon these questions his conclusions are not reviewable by this Court on exceptions.

In the cases cited by the appellants from other jurisdictions, the questions came before the Appellate Court on appeal or motion where a different question was presented and the evidence reviewed as to its sufficiency.

The mandate, however, in this case must be

*Exceptions overruled.*

PATTANGALL, C. J. — Dissenting.

I do not concur in the opinion of the majority of the court. A long and careful study of this case convinces me that the instrument purporting to be the last will and testament of Maud Gammans can not properly be admitted to probate under the laws of this state; and notwithstanding the high respect in which I hold the author of the opinion and those of my associates who have concurred with him, I regard it my duty not only to file my dissent but to discuss somewhat in detail the reasons which compel me to view the matter from an entirely different standpoint.

This case is of great importance. Not only is a very substantial fortune at stake, but two questions of law are involved, one of which has never been before this court, the other never directly passed upon. We are called upon to decide for the first time under what conditions a loose leaf will may be given effect. We are also to determine the requirements which permit incorporating by reference documents not directly made a part of a will. These are questions not to be lightly passed over. Upon the decision may depend the future distribution of estates in which property rights more extensive than those in issue in a hundred ordinary lawsuits are to be adjusted. Such a situation compels the exercise of meticulous care.

It is, of course, the purpose of courts of probate to give effect to the expressed desires of those who attempt to make testamentary disposition of their property, whenever it is possible to do so without transgressing legal limitations. At the outset of this case, the court is confronted with the proposition that there is no way in which this testatrix's apparent and definitely expressed plan for the disposal of her property can be carried out. Courts may be justified in straining the law when the result reached is that effect is given to the wishes of a deceased person, but there is no excuse for doing so when that result can not possibly be reached.

The documents presented here, and in which Miss Gammans undertook to dispose of her property, consisted of twenty-eight unattached sheets of note paper and a memorandum book. The bulk of her property is described in the loose sheets and a reference therein was intended to make the memorandum book a part thereof. This book was referred to in this language: "I direct my executors to distribute among my friends or carry out such directions as will be found in a little book marked A- on the inside cover which will be found with my will" (signed) Maud Gammans.

A little book marked on the inside cover A- was found with the loose sheets, after her death, in an unsealed envelope which in turn was enclosed in a sealed envelope. The book contained bequests to twenty-nine persons, among whom were two of the attesting witnesses to the alleged will. If the book could properly be incorporated in the will, probate must therefore be refused.

· The opinion rejects the book and I agree with the conclusion of the majority of the court in that respect. I do not find, however, any "internal evidence" in the book indicating that it was compiled after the execution of the will; nor is that necessary. The evidence clearly indicates that the book was in existence at that time. The burden was on those who sought its consideration as a part of the will to satisfy the court not only that it then existed but that its contents also then existed. They fail to sustain this burden. There are certain entries in the book from which such a conclusion might be drawn; there are also entries from which the opposite might be argued, but nothing which really aids materially, in deciding the question. All that one can say is that the burden of proof is not sustained. The book goes out of the case on that point.

The sole remaining issue is whether or not there was presented to the court below sufficient evidence of certain essential requisites on which to base a finding that the twenty-eight sheets of paper offered for probate as the last will and testament of Miss Gammans were all present at the time of the signing of the page marked 28, in the form in which they now appear, and were executed by her as one instrument as and for her will.

On that proposition the burden of proof rests on the proponents of the will. There is no presumption of law or of fact in their favor. They must prove their case.

Loose leaf wills may be admitted to probate even in jurisdictions where statutes similar to those in this state safeguard the execution of wills; but after an exhaustive examination of the authorities, we find no case in which such a will has been sustained unless one, at least, of three conditions has been met — either the various sheets were physically attached, or connected by their internal sense by coherence or adaptation of parts, or identified by oral evidence as being present at the time of execution.

These conclusions of law are in accord with the majority opinion. It is also agreed that the sheets were not physically attached. The discussion therefore narrows to two simple propositions — (1) Are the sheets connected by their internal sense, by coherence or adaptation of parts? (2) Are they identified by oral evidence as

being present at the time of execution? The burden is on the proponents to establish one or both of these propositions.

There is absolutely no evidence of identification. The witnesses were agreed that aside from the sheet which bore the attestation clause, it was impossible to identify a single sheet. They saw a "pile of papers"; the papers "look like" or "looked exactly like" those offered for probate. In other words, they resembled the ordinary note paper in common use in every home in Maine.

Whether or not there was anything written on the sheets which they saw at the bank, they did not know. Whether those sheets were numbered or not, they did not know. Whether the sheets which Miss Gammans had in her possession in June, 1926, were or not the sheets which were found in the envelope after her death, they did not know and frankly said so.

There is left, then, nothing for the proponents excepting connection by the internal sense, by coherence or adaptation of parts, upon which to base the right to probate of the collection of loose leaves which they claim constitute the last will and testament of Maud Gammans.

So far as contents are concerned, the sheets are entirely disconnected. Each stands alone, sufficient unto itself, wholly unrelated to the remaining sheets. Each is signed at the bottom "Maud Gammans." The only variance in this respect is that one of the sheets is also so signed in the middle of the page, two disconnected paragraphs appearing thereon.

Any sheet, or, in fact, all of them excepting those numbered one and twenty-eight, could be withdrawn, destroyed and substitutes inserted without affecting in any way the sense of continuity of the assembled document. The only possible evidence of connection is that the sheets are numbered one to twenty-eight.

The case of the proponents as set forth in the majority opinion rests on the proposition that the court below "may have been satisfied from the testimony and from an examination of the several sheets of paper, that the last page was numbered 28 at the time of execution and from the circumstances shown and internal evidence, that the other pages also at the time of execution had already been numbered in consecutive order and by Miss Gammans."

But there was no evidence that the last sheet was numbered twenty-eight at the time of execution and no evidence, external or internal, which could possibly aid the court in determining when the remaining sheets were numbered. Nor is there any intimation in the findings of fact by the trial judge that such a course of reasoning was followed.

An examination of the loose sheets indicates plainly that they were not all filled out at one time; nor were they all signed at one time; nor were the various sheets signed as they were filled out. In one instance the writing overrides the signature, showing very plainly that the sheet was signed and afterwards filled out. In brief, the alleged will is a piece of patchwork.

The mere fact that the instrument was not compiled at one time is not, of itself, important but it emphasizes the burden which the proponents must sustain of proving that it was all written previous to the time of execution. The case is absolutely bare of evidence on this point. There is nothing from which one would be justified in forming a serious opinion as to whether or not any single sheet excepting that marked with the number twenty-eight was in existence when that sheet was signed. So far as evidence goes, the first twenty-seven sheets may all have been signed and filled out at any time during the two years that elapsed between the date of the signing and the date of Miss Gammans' death.

The case stands then, unique in the history of loose leaf wills admitted to probate in jurisdictions where a statute such as ours governs, no physical connection of the parts, no coherence or continuity of thought to join together the separated portions and no pretense even of identifying a single sheet save that which bore upon it the attestation clause alone. To permit the probate of such a will, to even entitle this collection of disjointed, disconnected fragments, a will, is to do violence to all precedent and to open wide the door of opportunity to fraud.

The majority opinion stresses the proposition that the presiding Justice below found for the proponents and reiterates the statement frequently appearing in our reports in connection with equity appeals and cases coming to this court on exceptions from the

Supreme Court of Probate that if there is "any" evidence in support of the court's finding, it must stand.

The impression is given that when a judge becomes a trier of fact, his decision stands on a higher plane than that of a jury exercising like authority. I do not regard this as the correct view. It has neither logical nor historical basis. Findings of fact by triers of fact should only be set aside when they are unsupported by evidence or are founded on a misconstruction of evidence or on a plain misapprehension of its effect and probative force.

The word "any" is misleading. The scintilla rule is not in force in this state. Whatever may be said of the decision below and, in fairness, it should be remembered that in the hurry and confusion of a *nisi prius* term, the presiding Justice was called upon to rule on questions never before submitted in this jurisdiction and rarely coming within the experience of any member of the Bar or Bench of the country, there seems no excuse here, after mature deliberation, to reach a result inconsistent with precedent and to base the reasoning which leads to that result upon one or two isolated bits of testimony which a careful reading of the record shows were entirely inconsistent with the evidence as a whole and inconsistent with the remaining statements of the witness from whose testimony these fragments are culled.

The proponents utterly failed to sustain the burden of proof on either of the propositions, one at least of which they were obliged to prove in order to entitle the documents presented to be admitted to probate as a will. Exceptions should be sustained.

FARRINGTON, J. concurs in the above dissenting opinion.