**GUILFORD TRUST COMPANY, Trustee Under Will of Ina E. Boone**

v.

**MILO COMMUNITY HOSPITAL, Shriners Hospital for Crippled Children, Richard J. Dubord, Attorney General et al.**

Supreme Judicial Court of Maine.

March 28, 1967.

Stuart E. Hayes, Dover-Foxcroft, for plaintiff.

Rudman, Rudman & Carter, by Gerald E. Rudman and Kenneth C. Roy, Bangor, for Milo Community Hospital.

Bradford H. Hutchins, Waterville, Richard J. Dubord, Atty. Gen., Augusta, for Shriners Hospital.

Arthur C. Hathaway, Dover-Foxcroft, guardian ad litem for all unknown persons.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, DUFRESNE and WEATHERBEE, JJ.

MARDEN, Justice.

On report. This is a complaint seeking construction of a clause creating a trust in the Will of Ina E. Boone, late of Brownville.

The Will was executed in 1946 and remained in the possession of the testatrix.

Paragraph EIGHTH of the Will, creating the reference trust, referred to "directions attached." The Piscataquis Savings Bank was nominated as Executor and Trustee of the Will.

Shortly before the death on November 18, 1958 of the testatrix she delivered to an official of the Piscataquis Savings Bank a sealed envelope, which upon being opened after her death was found to contain a Will and an undated, handwritten and signed document in letter form (letter) bearing at its top, in a position which would indicate the addressee, the words "Piscataquis Savings Bank."

If the letter were physically attached to the Will, in any way, it was by a paper clip.

The envelope and contents were delivered to the bank's counsel, who seasonably delivered the Will with the letter attached to it by a paper clip to the Probate Court.

The Will was seasonably allowed on January 1, 1959, but the status of the letter does not appear to have been adjudicated at that time.

Paragraph EIGHTH of the Will read as follows:

"I give, bequeath and devise all the rest, residue and remainder of my estate to Piscataquis Savings Bank, of Dover-Foxcroft, Maine, in trust nevertheless, to be used toward establishing a home for aged people and cripples in Piscataquis County, preferably in the Town of Milo, providing such a home can be established within a period of ten years from the date of my decease. If at the expiration of ten years from the date of my decease such a home has not been established, then I direct my Trustee hereinafter named, to pay yearly to the Shriners Hospital, Springfield, Mass. the interest from said residue of my estate, but when a home for aged people and cripples is established in Piscataquis County I direct my said Trustee to pay the residue of my estate to the Directors or Trustees of said home to be used according to directions attached to this my last will and testament; if at the end of twenty years from the date of my decease such a home has not been established in Piscataquis County, then I direct my said Trustee to pay to said Shriners Hospital said residue and remainder of my estate. I name Piscataquis Savings Bank, of Dover-Foxcroft, Maine, Trustee and Executor of this my last Will and Testament, hereby revoking all former Wills by me made."

The Piscataquis Savings Bank being unqualified to act as a fiduciary, the Guilford Trust Company, here plaintiff, was appointed Trustee and has since served in that capacity.

The Milo Community Hospital (Hospital), by virtue of planned expansion of its facilities, has since claimed that it is qualified to receive the corpus of the Boone Trust, and has made a demand upon the Trustee. The Trustee addressed a petition to the Probate Court asking the effect, if any, of the so-called "directions attached" to the Will and whether the Hospital was entitled to the fund, which court by decision of April 25, 1966, held that the instructions (letter) were not a part of the Will, but that the Hospital was entitled to receive the trust fund. The Shriners Hospital for Crippled Children appealed and the matter comes up on report with stipulated questions as follow:

"A. Does the document in a form of a letter addressed to the Piscataquis Savings Bank filed in the Probate Court with the will constitute part of the will, or if not, may it be considered in defining the testatrix's intentions in connection with the use of the word 'home' in the aforesaid will?

"B. In the light of the testimony and evidence presented to the Probate Court in and for Piscataquis County, does the proposed building and services therein described constitute 'a home for aged people and cripples in Piscataquis County'?

"C. Does the Milo Community Hospital qualify as a beneficiary of the trust established under the Will of Ina E. Boone as said will is finally constituted and interpreted by the Law Court?"

### Question 1

In the present proceeding the letter was identified as being done by the hand of the testatrix and the signature to it was identified as that of the testatrix. The letter was expressed in the first person and explained what the writer meant by "an old *womans* home" and how, in general terms, such home would qualify as beneficiary of the residuary estate. The nature and content of the letter would permit it logically to be considered as "directions" applicable to the Will. Whether or not it was "attached" to the Will under circumstances as to make it a part of the Will by incorporation, see Fitzsimmons v. Harmon, 108 Me. 456, 458, 81 A. 667, 37 L.R.A.,N.S., 400, and Sleeper v. Littlefield, 129 Me. 194, 199, 151 A. 150, 71 A.L.R. 518, is in issue.

There is no evidence that the letter was in existence at the time the Will was executed.

 If the letter had been allowed by the Probate Court as part of the Will there could be no issue about its use for interpretative purposes at this time. It could not have been so allowed, for the issue was impleaded and considered by the Probate Court in the present proceeding. In any event the burden of establishing the Will of Ina E. Boone was upon its proponents, 57 Am.Jur., Wills § 854, which proof includes observation of the statutory formalities, Mitchell et al., Exceptants In re Will of Emma J. Loomis, 133 Me. 81, 82, 174 A. 38, and qualification of any document sought to be incorporated within the Will by reference, *Sleeper*, supra, at page 199, 151 A.2d at p. 150. If it were not allowed as part of the Will it can neither be considered a part of the Will now, 7 years later, nor as affecting the interpretation of the Will.

The present record does not qualify it as part of the Will.

The answer to both parts of Question 1 is in the negative.

### Question 2

What is a home? The word is understood by everyone, but cannot be completely defined by anyone. Certain it is that the very characteristic which distinguishes a home from all other types of shelter is the characteristic best understood, but least subject to definition.

"It is impossible to formulate a comprehensive definition of the word 'home.'

* * * Men and animals have an instinctive idea of its meaning." White v. White (1944), 183 Va. 239, 31 S.E.2d 558 [6], 562.

That characteristic has to do with the peculiar relationship between the person and his home.

"Home": "Focus of domestic affections (home is where the heart is)." Webster's Third New International Dictionary, 1961.

"A home is a dwelling place of a person, distinguished from other dwelling places of that person by the intimacy of the relation between the person and the place." Restatement, Conflict of Laws § 13.

■ Factors involved in determining home include "mental attitude toward the place," persons and things therein including pictures, books and other personal belongings. Restatement, supra, Comments c. and g. The Restatement rule followed in Zimmerman v. Zimmerman (1945), 175 Or. 585, 155 P.2d 293 [5–15], 296; and Coca-Cola International Corporation v. New York Trust Co. (1939), 24 Del.Ch. 163, 8 A.2d 511 [15], 524.

In State of Missouri upon Information of Reardon v. Mueller (St. Louis Court of Appeals, 1965, with motion for re-hearing and transfer to Supreme Court denied), Mo. App., 388 S.W.2d 53 [5, 6], 57, the court stated more colorfully:

"Perhaps no word in any language is so well understood and yet so imperfectly defined as the word, 'home.' * * *. Certain it is, however, that no definition can be complete which omits the element of sentiment, that quality, intangible and elusive though it may be, * * * that goes beyond the law's language and animates the image with the breath of family affection and the gentle warmth

of hospitality shared with friends, * * *."

Conversely in Western Los Angeles Citizens' Committee on Liquor Licenses et al. v. State Board of Equalization et al. (Cal. Dist.Ct. of Appeal 1952, re-hearing denied), 111 Cal.App.2d 843, 245 P.2d 571, the issue was whether a liquor licensee was within the prohibited distance of a "home, retreat, or asylum" for veterans. The court of original jurisdiction found that a hospital of the Veterans Administration was a "retreat or asylum" within the meaning of the statute. On this the court said at [1] page 573:

"All the evidence was that it (the hospital) is exclusively a medical and surgical hospital where patients remain only while undergoing treatment. Under no tenable theory could it be regarded as a home, retreat or asylum."

In relating the services which the Milo Hospital proposes to offer in its expansion, and which are represented as qualifying it to receive the trust fund, the Chairman of the Board of Trustees testified in salient respects as follows: That the plan of the hospital was to build an addition of 20 beds, 10 surgical and 10 nursing care, the 10 nursing care beds to be devoted to "nursing, rehabilitation, long term care and terminal care of the inmates"; that this service would be extended to no patients less than fourteen years of age; that to qualify for occupancy of a nursing bed, the applicant would have to be unable "to take care of themselves at home"; that the purpose of the nursing care was to rehabilitate the patient whereby they could "go back home to take care of themselves"; that the rates applicable to such persons would be consistent with those made by other non-profit organizations; that there would be no requirement that the patient would turn over his property to the hospital upon admittance or arrange to do so upon death; that each of the proposed single bed rooms would have toilet facilities and there would be a lavatory and flush to each two double occupancy rooms.

The witness was asked:

"Q. Is there to be any priority to aged people in the use of the nursing beds?"

"A. I don't think so."

The witness testified that visiting hours would be regulated "as in any other hospital"; that a patient recovering from illness would be expected to leave; that there is no particular provision for the patient to hang pictures; that there would be some drawer space for personal belongings beyond which basement storage would be utilized; and that the rooms are furnished exactly as the rooms in the surgical area.

The witness is to be commended for his candor in describing the proposed services, but it represents only hospital extension as distinguished from the concept of a home.

■ The answer to Question 2 is in the negative.

### Question 3

From the above, it follows that the answer to Question 3 is in the negative.

So ordered.