[Civ. No. 18678. Second Dist., Div. Three. June 20, 1952.]

WESTERN LOS ANGELES CITIZENS' COMMITTEE ON LIQUOR LICENSES (a Corporation) et al., Respondents, v. STATE BOARD OF EQUALIZATION OF THE STATE OF CALIFORNIA et al., Appellants.

Edmund G. Brown, Attorney General, Bayard Rhone, Deputy Attorney General, and David P. Connelly for Appellants.

J. Henry Schweitzer for Respondents.

SHINN, P. J.—Defendants Louis L. Lasher and the Board of Equalization appeal from a judgment ordering the board to vacate and set aside its order granting a general "on sale" liquor license to Lasher for premises located at 1776 Westwood Boulevard, Los Angeles, and to enter a new order denying the license. The superior court granted a peremptory writ of mandate on the ground that Lasher's premises are within 1½ miles of "a building actually occupied as a home, retreat or asylum" for veterans, which would render any sale of intoxicating liquor on the premises a violation of Penal Code section 172(1). In our former opinion we af-

firmed the judgment which directed the board to deny Lasher's application. We assumed there was no substantial conflict in the evidence before the board as to the distance between the two buildings. There was a conflict, although plaintiff argued that evidence given by officers of the board with respect to a measurement they made, showing the distance to be more than 1½ miles, was so uncertain and unreliable as to have no force or value. We granted a rehearing for the reason that there was inherent in our former opinion a decision of a controlling question of fact, as to which the evidence before the board was in substantial conflict. As will be developed in our discussion we are now of the opinion that the order should be annulled, but that the matter should be referred to the board for further consideration.

As assignee of an existing license, Lasher applied for a general ''on sale'' license for his café. There were existing ''off sale'' licenses at Harold's across the street, and Tony's next door. The application was opposed by plaintiffs on the ground it would be against public welfare and morals to license the premises for the reason that Y. M. C. A. and Y. W. C. A. buildings, schools and churches were in the immediate vicinity, and the further reason that the premises were within 1½ miles of Sawtelle Soldiers' Home Building (#215) and Wadsworth General Hospital (Veterans Administration facilities). The examiner recommended denial of the application because of the churches and youth groups in the vicinity, and it was denied by the board on October 9, 1950, for that reason. The board then found that the license would not conflict with sections 172 or 172(a) of the Penal Code. Lasher's petition for reconsideration was granted and a hearing was held by the board on October 26, 1950. The board again found that sales at the location would not be in violation of section 172(1). The board granted the license and plaintiffs petitioned for a writ of mandate. After a consideration of the transcript of the board hearing the court rendered judgment issuing a peremptory writ ordering the board to revoke the license.

The court found that Wadsworth Hospital is a ''retreat or asylum'' within the meaning of Penal Code section 172. All the evidence was that it is exclusively a medical and surgical hospital where patients remain only while undergoing treatment. Under no tenable theory could it be regarded as a home, retreat or asylum. The type of building to which the code section relates is one which provides residential facilities.

There are no such facilities for patients in the Wadsworth Hospital. When the Legislature specified "home, retreat or asylum" it did not also mean "hospital." The finding would appear to have been made inadvertently. It is not sustained by the evidence, and therefore cannot lend support to the judgment.

Building "215" is a barracks building of the Veterans Administration. It is not questioned that it is a building to which section 172(1) would apply if it is within the minimum distance. At the hearing before the hearing officer petitioner Lasher introduced in evidence a map of the vicinity showing the measurement of the distance between building 215 and the licensed premises along a route following roads as delineated upon the map. According to these measurements, the distance was 8022.22 feet (102.22 feet greater than 1½ miles). The route followed in this measurement extended to the main center entrance of building 215. At the hearing before the board objectors, plaintiffs herein, introduced another copy of the same map showing measurements along the same route up to a point about 200 feet from building 215; from that point the measurement ran to the south end entrance of the building. From the point where the two routes separated the distance to the south entrance to the building is 186.86 feet shorter than the distance to the main center entrance. Taking the shorter measurement, the distance between the licensed premises and building 215 is 7835.36 feet (84.64 feet less than the required distance). Lasher and the board stood upon the measurement to the main center entrance of the building; plaintiffs herein contended for the shorter measurement. It is not questioned that up to the point of this deviation both measurements were in compliance with section 172(4) of the Penal Code which provides that the distance is to be measused by "following the shortest road or roads connecting the points in question." The trial court adopted the measurement to the south entrance of the building and consequently found the distance to be less than 1½ miles. Our first question is to determine which was the correct terminus of the measurement.

The evidence indicates the end entrance is at present locked and not used. It is argued that the board reasonably decided that the main entrance, which is the one generally used, should be one terminus of the measurement. We might agree if the statute left any room for interpretation, but it does not. Section 172 mentions two points—the place of sale and the "building" described—making no provision for method of

measurement other than that it is to be by "the shortest road or roads connecting the points in question." The board used a practical method in measuring between the entrances of the two buildings, but if a door in the veterans building was taken as a terminus of the measurement, it should have been the one which would first come within the minimum distance. This is the door at the south end of the building, which is upon an established road. It is not necessary to consider respondents' contention that the approach to the main entrance is a walkway, and not a road.

Although the measurement adopted by the trial court conforms to the statute, the result reached would not furnish a ground for annulment of the order unless, upon the evidence which was before it, the board was required to find the distance to be less than 1½ miles. It was alleged in the petition for writ of mandate and the court found: "That at said hearing for reconsideration petitioners presented *uncontroverted* evidence proving that the location of respondent Louis L. Lasher's place of business at 1776 Westwood Boulevard is within one and one-half miles of a 'building actually occupied as a home, retreat or asylum for ex-soldiers, sailors and marines,' as provided in section 172 of the Penal Code of the State of California, when measured in conformity with the requirements of said section and the rules of respondent, State Board of Equalization." (Emphasis added.) If this finding is supported by the evidence, it is sufficient to support the judgment. The board would have been without authority or discretion to issue such a license if it was established by uncontradicted and satisfactory evidence that the place of intended sale was within a prohibited area. But the finding in question is not supported by the evidence. The conclusion of the trial court may be accounted for in this manner: It appears that upon the trial attention was centered upon the question of law whether the proper measurement would be the longer route adopted by the board, or the shorter route for which the objectors contended. In our former opinion the only matter we discussed and decided in this connection was the one pertaining to the entrance of building 215 which should be taken as a terminus of the measurement.

There was a clear and substantial conflict in the evidence as to whether the two points are more or less than 1½ miles apart. The record shows affirmatively that upon the reconsideration the board considered the entire record, including a transcript of the evidence taken by the hearing officer. A

witness before the hearing officer was a Mr. Barham, a liquor control officer. He testified that he, assisted by Officers Dunham and Thompson, measured the distance by automobile speedometers, following the route shown on the maps, and that they found the distance to be 8329 feet (*409* feet more than 1½ miles). They taped the distance between the south wall of building 215 and the nearest roadway, and from that point used two cars, the speedometers of which had been calibrated by the Automobile Club of Southern California. If it be granted that this was not a satisfactory method of measurement, where exactness was required, the record shows that the officers used great care and the evidence was clearly sufficient to constitute a substantial conflict with the measurement shown on the map. Normally, a map prepared by a licensed surveyor would be accorded greater authenticity than the kind of measurement made by the officers, but, as previously stated, the map here in question was not authenticated by the testimony of the maker, or in any other manner. At the hearing one member of the board stated that the testimony of the officers should be deemed controlling and there was no dissent. However, the board decided only that the distance was more than 1½ miles measured to the main central entrance of building 215, and for that reason granted the license.

The rights of the parties cannot be fairly adjudicated until it is established to a certainty whether the applicant's premises are within a prohibited area. Although the evidence upon that point was conflicting, it is clear from the record that the board considered it unnecessary to resolve that conflict and did not resolve it. In the board's opinion, it was not material which was the correct measurement, inasmuch as by either method the distance to the main entrance was in excess of the minimum. We do not know what the board would have decided as between the measurement made by the officers and the figures shown on the map, or whether additional evidence would have been taken if it had been deemed necessary to make that decision. It is clear, however, that we cannot weigh the evidence upon this point and reject altogether that given by the officers. The board must decide one way or the other. Where the record clearly shows that the board, by reason of its misinterpretation of the law, failed to consider material evidence which, if found reliable, would have supported the board's findings and order, the court should not annul the order upon the ground there was other evidence which would have supported findings contrary to those made by the board.

Neither should the court affirm the board's order when to do so would require a decision of fact upon conflicting evidence, which is the exclusive function and duty of the board. Lasher, being the real party in interest, should not be prejudiced by mistakes of the board. The only course that will give assurance that no injustice will be suffered by either of the parties is to modify the judgment so as to refer the matter back to the board for a redetermination of the controlling fact, namely, the distance between the two buildings, measured in accordance with the views we have expressed. Appellants very properly suggest that this should be done in accordance with section 1094.5(e), Code of Civil Procedure. We think the trial court would have referred the matter to the board if the parties had made a clear presentation of the evidence that is in the record. We may add that we do not suggest that it is a proper practice to measure distances by mileage registered on automobile speedometers where the question is a close one. Surveying is the proper method. We hold only that the board should weigh the conflicting evidence and determine the correct distance in accordance with evidence that is entirely free from doubt.

 Appellants contend the petition was filed after the 30-day limitation period of section 11523 of the Government Code for review by mandamus. Section 11518 of the code provides that: "The [Board's] decision shall be in writing and shall contain findings of fact, a determination of the issues presented and the penalty, if any. . . . Copies of the decision shall be delivered to the parties personally or sent to them by registered mail." Section 11519 provides: "(a) The decision shall become effective 30 days after it is delivered or mailed to respondent unless: A reconsideration is ordered within that time, or the agency itself orders that the decision shall become effective sooner, or a stay of execution is granted." Section 11523 provides, in part: "Except as otherwise provided in this section any such petition [mandate] shall be filed within 30 days after the last day on which reconsideration can be ordered." Under section 11521, "The power to order a reconsideration shall expire 30 days after the delivery or mailing of a decision to respondent, or on the date set by the agency itself as the effective date of the decision if such date occurs prior to the expiration of the 30-day period." The court found the license was issued to Lasher October 26, 1950, and further, "that the decision of the Board [as defined in Government Code, sec. 11518] ordering that

the application of respondent Louis L. Lasher for such license be granted was not rendered until November 10, 1950, and was not effective until November 13, 1950.''

On October 26th the board adopted a resolution granting the license, but it did not render its decision in writing and findings until November 10th. These were mailed in Sacramento to the defendant at Los Angeles on November 10th. The board contends that the 30-day period within which a petition for mandate could be filed commenced to run October 26th for the reason that the matter was actually decided and the license was issued on that date. We cannot agree. The resolution of the board did not order the license to be issued at that time nor fix any date for its issuance. The decision of November 10, 1950, provided that it would be ''effective on notice hereof.'' The time would commence to run not earlier than November 10th when the written decision and findings were filed. December 10th fell on Sunday, and the petition for mandate was filed on the following day, or within the 30-day period. This being true, it is unnecessary to determine whether the fixing of November 13th as the effective date of the order affected in any manner the element of time for filing a petition for writ of mandate. Neither is it material that November 11th and 12th were holidays, and, as implied by the court's finding, that notice of the order was not received by the defendant until November 13th.

The judgment is modified as follows: The court is directed to vacate its finding that the premises of Louis L. Lasher are within 1½ miles of a home, retreat or asylum, and to add to the findings a recital that the court makes no finding upon that issue for the reason that it is the duty of the Board of Equalization to determine the same upon the evidence already taken, and that may be taken upon a further hearing; judgment shall be entered directing the board to vacate its order granting the application of said Lasher and to rehear and redetermine the matter of said application and protests as of the date of the former reconsideration. As so modified the judgment is affirmed.

Vallée, J., concurred.

WOOD (Parker), J.—I concur in the part of the opinion wherein it is held that the measurement should be to the south entrance, and that the order of the board should be annulled. I cannot agree, however, that there was a substantial conflict in the evidence as to whether the south entrance was less

than 1½ miles from Lasher's place of business. The matter was submitted to the trial court and to this court (at the first hearing) upon the basis that it was uncontroverted that the distance to the south entrance was less than 1½ miles and that the distance to the main entrance was more than 1½ miles. The trial court found that there was uncontroverted evidence that Lasher's place was within 1½ miles of building 215. In my opinion the evidence supports that finding. The principal question for the trial court and this court (at the first hearing) was whether the measurement should be made to the south entrance or the main entrance. The trial court and this court held that the measurement should be to the south entrance. It was only after these rulings, unfavorable to the board, had been made that the board raised the question as to conflicting evidence—asserting in effect that when it decided the case, by relying upon the survey *introduced in evidence by Lasher,* there was conflicting evidence before the board, in that, the evidence as to measuring with automobiles was in conflict with evidence as to the survey made by a licensed surveyor. It seems to be the board's position that, by reason of such alleged conflict, it should now be entitled to redecide the fact as to the distance by relying, presumably, upon the purported measurement by automobiles which *exceeded the survey measurement by 409 feet.* It is to be remembered that Lasher, petitioner for a license, is the one who furnished the first survey map showing the distance to the main entrance to be 8,022.22 feet (being more than 1½ miles). It is not to be assumed that he presented untrustworthy evidence. He does not claim that the survey was wrong. The objectors herein (the Western Los Angeles Citizens' Committee) accepted Lasher's survey as being correct. They introduced a survey map which was a copy of Lasher's survey map, except that their map showed the distance from a certain point in the road (near building 215) to the south entrance. Their map showed that the whole distance from Lasher's place to the south entrance was 7,835.36 feet (being less than 1½ miles). Both survey maps, which were made by the same surveyor, showed the same distance from Lasher's place to a certain point in the road near building 215 (from which point measurements were made to the two entrances). From that common point to the main entrance, both maps showed the distance to be 384.62 feet. From that point to the south entrance, the objectors' map showed the distance to be 197.76 feet. No one objected to the survey as to the distance

from that common point to the south entrance. Under such circumstances, wherein the genuineness and accuracy of the survey were not questioned, it seems to me that in reality no point regarding authenticity of the survey maps is involved. The pathway or roadway from said common point on the road to either entrance was not an automobile road and those distances were not, and could not be, measured by automobile. Even if the automobile method of measuring were a proper method of measuring, it is clear that measuring by automobile was not in conflict with the survey from said common point on the road to the entrances. In other words, if any measuring by automobile is to be regarded as being in conflict with the survey it would be the automobile measurement from Lasher's place to the said common point on the road. Certainly there was no conflicting evidence as to the distances from the common point in the road to the entrances. In my opinion the automobile method of measuring is so unreliable that the evidence as to measurement by that method from Lasher's place to the common point on the road should not be regarded as substantial evidence in conflict with the survey covering that distance. Measuring by automobile is unreliable for many reasons, one of which is that the odometer registers only in units of tenths of a mile (528 feet), and if the automobile does not start and stop when the odometer registers exactly the beginning of a tenth of a mile it would be a matter of guesswork as to how far the automobile had gone after the last tenth was registered. If the board should decide that measuring by the automobile method, which involves meandering and guessing, is controlling as against a survey, I think it would be acting arbitrarily and capriciously, and that its order should be annulled. In the present case it appears that the board did reject the automobile method of measuring, and based its finding upon the survey. Its order recites in part: "The nearest such barracks is Building 215 which is over one and one-half miles from the premises in question by the nearest road or roads, being, *according to a survey submitted by applicant*, 8,022.22 feet distant." (Emphasis added.) In my opinion our first opinion was correct and the judgment of the trial court should be affirmed.

A petition for a rehearing was denied July 8, 1952. Wood (Parker), J., was of the opinion that the petition should be granted.

Respondents' petition for a hearing by the Supreme Court was denied August 14, 1952.